## McBEE v. SAMPSON et al.

### (Circuit Court, D. South Carolina. March 15, 1895.)

1. ASSIGNMENT OF LEASE—LIABILITY OF ASSIGNEE.
   An assignee of a lease, holding by assignment from the original lessee, may assign such lease to any person, even though insolvent, and assumes no responsibility for the payment of rent by his assignee.

2. SAME—COLORABLE ASSIGNMENT.
   It seems that, where an assignment of a lease is merely colorable, or is made in bad faith, for the purpose of evading responsibility, equity may give relief to the landlord.

3. SAME—INJUNCTION—ADEQUATE REMEDY AT LAW.
   Equity will not interfere to enjoin the assignment of a lease on the ground that the proposed assignee is insolvent, where the responsibility of the assignor would continue, and the landlord accordingly has an adequate remedy at law.

This was a suit by Vardry A. McBee against O. H. Sampson, H. P. Hammett, and others to restrain the assignment of a lease. Heard on motion to continue a preliminary injunction.

Perry & Heyward, for complainant.

Cothran, Wells, Ansel & Cothran, T. Q. Donaldson, and A. H. Donaldson, for defendants.

SIMONTON, Circuit Judge. The facts of this case are these, as set out in the bill: Complainant, Vardry A. McBee, and his brother, Alexander McBee, on 16th March, 1876, executed to the Camperdown Mills, a corporation of South Carolina, a lease of a tract of land, situate in the city of Greenville, S. C., on both sides of the Reedy river. The term of the lease was 30 years from the date of execution. The rent reserved was an annual rental of $4,870 on the 1st of March, 1876, to 1st March, 1884, and of $5,400 from 1st March, 1884, to 1st March, 1891, and from the 1st March, 1891, to the end of the term, $6,250; the rent payable semiannually, together with taxes accruing on the property. Nothing whatever was said in the lease concerning the assignment thereof by the lessee. The lessee, therefore, had full power to assign the lease at any time during its term. Greenaway v. Adams, 12 Ves. 395; Tayl. Landl. & Ten. § 402. In 1884 the Camperdown Mills became insolvent, and went into the hands of a receiver appointed by the state court; and on the 1st of August, 1885, pursuing an order of the said court, the receiver sold at public auction all the property of the Camperdown Mills, including this lease. At that sale. H. P. Hammett purchased the entire property of the Camperdown Mills, including this lease, for the sum of $70,000. A deed of conveyance was executed by the receiver to H. P. Hammett and his associates, in which each of the associates was mentioned by name, and the amount of his interest in the purchase specified. All those associates of H. P. Hammett who are now alive are made parties defendant to this proceeding, together with the personal representatives of those of them who are now deceased. Hammett and his associates went into the possession of the property; carried on the business thereof until the January following. In the meantime they had obtained an act of incorporation from the legislature of the state of South Carolina, and had accepted the same, and thenceforward the premises were occupied and the business carried on by this corporation, which bore the name of the Camperdown Cotton Mills. No assignment in writing was made of this lease by Hammett and his associates to the Camperdown Cotton Mills. The Camperdown Cotton Mills continued in business until some time in April, 1894, when it in turn became insolvent, and passed into the hands of a receiver under proceedings instituted in this court by O. H. Sampson & Co. On the 31st of October, 1894, all the assets of the Camperdown Cotton Mills, except this lease, were sold by James L. Orr, Esq., who had been appointed receiver. At this sale O. H. Sampson & Co. became the purchasers. All of the property of the Camperdown Cotton Mills being thus disposed of, except this lease, a meeting of the directors of the said company

has been called for the purpose of considering the propriety of demanding from Hammett and his associates a formal written assignment of the lease to the Camperdown Cotton Mills. In proceedings heretofore had in this court in the original cause it was held that a written assignment was necessary to transfer this lease. On receiving notice of this proposed action on the part of the directors, the complainant filed this bill. After reciting in substance the facts above stated, and charging that the object of the meeting was to transfer to an insolvent corporation this lease, executed to him and his brother, and thereby to substitute this insolvent in place of Hammett and his associates, who, he claims, are responsible to him for the payment of the rent, and who are abundantly able to meet this responsibility, and asserting that, if this proceeding is allowed, he will be entirely deprived of the means of collecting his rent, and so defeat the very object of this lease, the bill prays that defendants be enjoined from making or attempting to make any deed, assignment, or transfer of any sort of the lease in question to the Camperdown Cotton Mills, or to any other corporation or person unable to pay the installments of rent as they fall due thereunder, without first securing to the complainant a prompt payment of the rent. Alexander McBee, who was one of the lessors, some time previous to this suit assigned all his right, title, and interest in the lease to the complainant. The rent of the premises up to the filing of this bill, with the exception of a period between the 1st day of March, 1894, and 30th day of April, 1894, has all been paid.

Upon the filing of the bill a rule was issued against the defendants to show cause why the prayer of the bill should not be granted, and an injunction issued in accordance therewith. The defendants have filed their return, in which, among other things, they say "that they are advised as matter of law, and aver, that, being simply assignees of said lease, they have the legal right, subject to the rights of said Camperdown Cotton Mills, to assign said lease to whomsoever they please, and that complainant has no equity to interfere." The question in this case is, what is the responsibility of the assignees of the lease to the lessor, and how long does that responsibility exist? There is no doubt that the lessee, being a party to the original contract, continues always liable thereon, notwithstanding any assignment he may make. Eaton v. Jaques, 2 Doug. 463; Tayl. Landl. & Ten. § 438. But an assignee by the assignment is put in privity of the estate of the lessor, but not in privity of contract. Childs v. Clark, 49 Am. Dec. 164. For this reason all the authorities hold that the assignee is responsible for the rent only so long as he remains in possession of the property, and they also hold that, in the absence of fraud, he can assign the lease at any time during his possession, and assume no responsibility for the payment of rent by his assignee. It is thus stated by Fields, C. J., in Johnson v. Sherman, 76 Am. Dec. 481:

"The assignee of a lease may discharge himself from liability for subsequent breaches of the covenants thereof by assigning over to a beggar, to a married woman, to a prisoner, or to a person leaving the state, provided the

assignment be executed before his departure, even though it be made for the express purpose of avoiding his responsibility, and a premium be given as an inducement to accept the transfer."

A lessee remains liable on his express obligation, notwithstanding he may have assigned his lease. Wall v. Hinds, 4 Gray, 256; Smith v. Harrison, 42 Ohio St. 180. And the lessor may sue, at his election, either the lessee or the assignee, or may pursue his remedy against both at the same time, though, of course, with but one satisfaction. In such case the liability of the original lessee depends upon privity of contract, and continues during the whole term, while the liability of the assignee depends upon privity of estate, created by the assignment, and continues only during the time he holds legal title to the leasehold estate during the assignment. Tayl. Landl. & Ten. § 452; 1 Washb. Real Prop. 326, etc.; Thursby v. Plant, 1 Saund. 241b, note 6. The whole subject is discussed, and the law in relation thereto distinctly declared, in Onslow v. Corrie, 2 Madd. 340. That was a case in equity, and in the discussion of the case the court says:

"Why is the assignee liable to the landlord? Because of the privity of estate. The original lessee is liable in respect of the privity of contract. The liability of the assignee of a lease begins and ends with his character of assignee. In him there is no personal confidence by the lessor." "An assignee may, whenever he pleases, assign again, and the moment he divests himself of the character of assignee he also shakes off his liability for rent. * * *"

Equity, however, gives relief to a landlord for his rent in cases of assignment—First, where the assignment is merely colorable and fictitious, the possession remaining with the assignor; or, secondly, though there be a real assignment, yet it has been made for the purpose of depriving the landlord of his legal remedies for rent due, or breaches of covenant incurred previous to the assignment. It will be observed that these cases, and, indeed, all the cases on the subject, including those quoted in the exhaustive argument of the defendants, speak of the liability of the assignees of a lease in any form. Counsel for defendants claim that the cases turn upon the form of action, whether in debt or covenant. But a close examination of the cases will show that this distinction exists only in the case of the lessee. If the lessor sue him in debt, he can plead assignment by consent of lessor; if the suit be in covenant, he cannot excuse himself by such a plea. This seems to be the settled law. Wood, Landl. & Ten. § 304; Id. p. 552, note 6. In the present case, Hammett and his associates lawfully received the assignment of the lease from the lessee, who, as we have seen, had the perfect right to assign it, there being nothing in the lease forbidding such assignment. During their possession under this assignment they came into privity of estate with the lessor, and were bound to pay all the rent which accrued or may accrue during their possession under the lease. But this lease is their property, and it is clothed with all the incidents of property, one of which is the right to dispose of it. They, therefore, under every principle of law, have the right to assign it. We have seen that under such an assignment they assume no responsibility for their

assignee, and that their responsibility for the future rent will cease with their assignment of the lease.   Of course, their responsibility for any rent past due and unpaid will continue.   If this assignment be not bona fide, and be merely colorable,—that is to say, if it be made for the purpose of avoiding responsibility for rent already, accrued, or to evade the performance of covenants they were bound, during their tenure, to perform, or if their assignee is simply a man of straw, who will hold for them,—then an assignment, made under such circumstances, would not free them from the responsibility.

It is contended that at the auction sale, at which Hammett and his associates became the assignees of the lease, the agent of the lessor gave public notice that the purchasers of this lease would be held to the same responsibility as was then upon the lessee. But this announcement could not affect the legal rights of any purchaser at this sale.   The lessee was not selling under any permission given it by the lessor.   The consent of the lessor was in no wise necessary to the sale, and therefore he could not impose any conditions which would in any way bind the purchaser.   The prayer of the bill is for an injunction against any assignment of the lease by Hammett and his associates.   It is very clear that no injunction as broad in its terms as this can be granted.   He also prays that they may be enjoined from assigning to the Camperdown Cotton Mills, an insolvent corporation, in the hands of a receiver, and practically defunct.   The power of the receiver, and the extent of his control over the property of the corporation of which he is appointed, are measured by the terms of the order appointing him. In the present case it appears that James L. Orr, Esq., in the case of Sampson and others against the Camperdown Cotton Mills, was appointed receiver of all and singular the property and effects of the defendant corporation.   If, therefore, as was contended by the counsel for the defendants at the hearing, the Camperdown Cotton Mills have an equity to require the assignment of this lease to it, that equity inures to the receiver.   And the perfecting this equity by a legal assignment would require that such assignment be made to the receiver, and in such case the lease would be held for the benefit of the creditors of the Camperdown Mills.   If, however, the Camperdown Cotton Mills never acquired such an equity, and if the entire property in the lease remains in Hammett and his associates, under the trend of the authorities above referred to, they could assign to the Camperdown Cotton Mills, even though it be insolvent.   The existence of the Camperdown Cotton Mills as a corporation has not been destroyed by the appointment of a receiver.   It does not hold its franchise at the will of this court, nor subject to the control of this court.   Nothing can deprive it of its franchise except a forfeiture thereof, enforced by the state of South Carolina, from whom it is derived, or by the voluntary surrender of the franchise on the part of the corporation.

There is another view to be taken of this case.   This court, sitting as a court of equity, is asked to make use of the extraordinary remedy of an injunction to prevent the assignment of this lease. If, as the complainant insists, Hammett and his associates have no

right to assign the lease, then the injunction is unnecessary. If they have no right to free themselves from responsibility by such an assignment, and if in fact that responsibility will remain, notwithstanding an assignment, or an attempt to make an assignment, or the assignment proposed, then the complainant has a plain, adequate, and complete remedy at law against them, and he does not need, and cannot entitle himself to, the aid of this court.

The restraining order heretofore granted is rescinded. The prayer for the injunction is refused. The bill is dismissed, with costs.