JOHN C. HICKSON AND GEORGE WHITENER, PARTNERS DOING BUSINESS AS HICKSON & WHITENER, *Plaintiffs in Error*, v. CARRIE ILKO BARTON, *Defendant in Error*.

Opinion Filed January 29, 1919.

1. Where a lessor after abandonment by her lessee of the leased premises enters upon and takes possession of the premises to protect the property from abuse and deterioration incident to abandonment, she is not precluded from recovering the rent due for the remainder of the term, as it becomes due under the lease, because of a clause in the lease which provides that on "breach of any of the covenants by the lessees herein contained, the lessor may re-enter said premises and immediately thereupon the said term shall be determined."

2. Evidence examined and found sufficient to support the verdict.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment affirmed.

*Shutts, Smith & Bowen*, for Plaintiffs in Error;

*A. J. Rose*, for Defendant in Error.

Ellis, J.—This is an action brought to recover damages for an alleged breach of an indenture of lease.

In May, 1914, Carrie Ilko Barton, who was the plaintiff below, and who for convenience will hereinafter be referred to as the plaintiff, entered into an agreement under seal with John C. Hickson and George Whitener, hereinafter referred to as the defendants.

The agreement provided that the plaintiff would erect a concrete building on a certain lot in the city of Miami and lease the same to defendants. It was agreed that the building should be constructed according to certain specifications and plans and should be ready for occupancy on September 1st, following. The agreement contained a lease of the premises to the defendants for a term of three years from September 1st, 1914, at an annual rental of nine hundred dollars payable in monthly installments of seventy dollars in advance. The defendants covenanted with the plaintiff to pay the rent as stated; to pay all charges for gas, electricity and water used on the premises; that the premises should not be used for illegal or improper purposes; that they would "keep the interior of the premises, and also the windows and doors thereof and the fixtures therein, and all the interior walls, pipes and other appurtenances in good and substantial repair and clean condition, damage by fire excepted, which may be necessary for the preservation of the property;" that the plaintiff or her agents should be permitted to view the premises and make necessary repairs and the defendants would deliver up possession at the end of the term.

On behalf of the plaintiff lessor it was agreed that she should keep the "external" parts of the premises

in good repair, that if the building should be destroyed by fire she should have the option to terminate the lease or rebuild the house, in which case the defendants lessees should have the use of it upon the same terms; that the defendants should quietly hold and enjoy the premises without interruption by the lessor, "provided that on the breach of any of the covenants by the lessees herein contained the lessor may re-enter said premises and immediately thereupon the said term shall be determined."

In March, 1916, the plaintiff commenced her action against the defendants for damages for breach of the agreeemnt.

The first count of the declaration alleged that the defendants entered into possession of the premises under the agreement on November 14, 1914, but that they had failed to pay the monthly installments of rent for the months of September, October, November and December, 1915, and January, February and March of 1916, and that the same was due and unpaid. It was also alleged that the defendants failed to "keep the interior of the premises and also the windows and doors thereof and the fixtures therein, and all the interior walls, pipes and other appurtenances in good and substantial repair and clean condition, damage by fire excepted, which might be necessary for the preservation of the demised premises," but on the contrary while they were possessed of the premises, until March 1, 1916, "permitted the interior of said premises and also the windows and doors thereof and the fixtures therein and all the interior walls with the appurtenances to be and contained and the same were for and during all that time ruinous and in great decay and deterioration for

want of needful and proper repair and for want of being kept in clean condition," etc. The count alleged that there had been no casualty by fire.

The second count declared in debt for the monthly rent for seven months at seventy-five dollars per month.

The remaining seven counts were the common counts

for goods bargained and sold; work done and materials furnished; money lent; money paid; money received by the defendants for use of the plaintiff; account stated and for defendants' use of the plaintiff's premises.

After many pleas, replications, rejoinders, motions and demurrers were filed, argued and disposed of, the parties arrived at the following issues:

That the defendants never were indebted as alleged; that no part of the rent is in arrears; that the lease was duly canceled and satisfied and the parties mutually discharged from its obligations on September 1st, 1915; that the plaintiff on September 1st, 1915, forcibly entered upon the premises and ejected the defendants therefrom and denied them the possession of the premises continuously until the bringing of the faction.

By additional pleas numbered nine, ten and eleven the defendants sought to recoup from the plaintiff damages which they averred they sustained because of the plaintiff's eviction of them from the premises and for the plaintiff's failure to construct the building according to the plans and specifications agreed upon between them. This phase of the case was at length brought to issue, but as no assignments of error rest upon any matter growing out of the counterclaim, it will be unnecessary to make any further references to it.

There was a verdict and judgment for the plaintiff in the sum of nine hundred and thirteen dollars and six cents and costs. To this judgment the defendants took writ of error.

There are fourteen assignments of error based upon the contention that the verdict is not supported by the evidence and is contrary to law; that the verdict is excessive, and that the court erred in giving certain instructions to the jury and refusing others requested by the defendants.

The court instructed the jury that the plaintiff could not recover upon the counts numbered two to nine inclusive. Therefore the case must be considered with reference to the recovery upon the first count of the declaration. That count was an action of covenant upon the lease; the breach alleged was that the defendants failed to keep the interior of the premises, the windows and doors, fixtures and interior walls, pipes and other appurtenances in good and substantial repair and clean condition necessary for the preservation of the premises, and that the rent for seven months during the term, to-wit, from September, 1915, to March, 1916, inclusive, was and still is in arrears and unpaid.

We have carefully examined the evidence, but fail to find any support for the contention that the verdict is unsupported by it. There was no evidence whatsoever to support the plea that the lease was duly canceled and satisfied; none which would have justified a verdict that the plaintiff on September 1st or at any time forcibly entered upon the premises and ejected the defendants therefrom and retained possession and denied defendants the possession of the place. One of the de-

fendants, J. C. Hickson, himself testified that, "We gave up possession in August, 1915. The reason we gave up possession was because it was a losing proposition. We couldn't stand for the laundry and the curtain. We were losing money every day. After we gave up possession we notified Mr. Davenport to that effect. Notified him ten days after we gave up possession." Mr. Whitener, the other defendant, testified to substantially the same thing. "We were losing business all the time," he said, "because (referring to the curtain) if we got it down it kept the stench and if we put it up the patrons of the place got drenched if it rained." Again: "I had a conversation with Mr. Davenport with respect to our not paying any more rent after August, 1915." With the defendants themselves testifying thus it is idle to argue that the plaintiff forcibly ejected the defendants and entered upon the premises and withheld possession of the same from them.

The clause in the lease relied upon by the defendants to defeat the plaintiff's recovery for rents is the following quoted above: "provided that on the breach of any of the covenants by the lessees herein contained the lessor may re-enter said premises and immediately thereupon the said term shall be determined." Plaintiff's entry upon breach by defendants of any covenants was not pleaded except in the manner stated, *viz*, that the plaintiff forcibly entered the premises and ejected the defendants. There were several of such pleas, two in defense of the action and one by way of recoupment. In drafting the pleas counsel seemed to have the view that the quoted clause of the lease secured to the plaintiff the right upon breach by the defendants of any covenant to enter the premises and *eject* the de-

fendants, and that in such case the lease became canceled, was rescinded and the term concluded, determined or brought to an end.

In this view of the meaning of that clause we quite agree with counsel and if the facts in the case supported the plea and there was no substantial evidence to the contrary we would hold that the verdict was excessive in that it included the rent for the seven months succeeding plaintiff's entry after breach. But according to the view we have of the evidence it tends to show and the jury seemed to so believe, that the defendants abandoned the premises, moved away from the place and surrendered or "gave it up," as Mr. Whitener, one of the defendants, said. The plaintiff merely took such steps as were necessary to protect the property from abuse and deterioration incident to abandonment. Renting it occasionally for a night for some special purpose, we do not regard as being inconsistent with such purpose.

The contention of defendants that the plaintiff's claim of injury to the premises is not supported by the evidence, is not sustained. The amount which the jury apparently allowed for damage to the building and fixtures therein was about three hundred and eighty-eight dollars. From the evidence this amount is not excessive. The contention that many of the items mentioned in the evidence for the removal of which the plaintiff was allowed damages were personal property and for the recovery of the value of which only trover would lie, is not well founded. It is not necessary to review the evidence upon this matter. It amply supports the plaintiff's contention that the injury was to the building and fixtures. The mirroroid screen the defendants say was an item

for the loss of which trover would lie. A witness testified that it "seemed to have been cut out with a knife." "Frames were knocked down and the mirroroid screen taken away." Poster frames were missing, standards and sockets of the orchestra pit were removed, brass railings were taken away, the electric fixtures on the wall were torn off, bulbs were taken out, the walls were stained and the condition of the building was unclean.

The building was used for a moving picture theatre and the items mentioned in the evidence constituted part of the "fixtures and appurtenances" mentioned in the lease for injury to which the plaintiff was entitled to recover damages in her action.

The evidence does not support the theory that the injury to the property occurred after the defendants abandoned it, and the plaintiff took possession. But on the contrary the evidence warranted the jury in finding that the defendants left the building in the condition complained of by the plaintiff. Therefore the charges of the court upon this point were applicable to the evidence and we find no error of law in the principles announced. The refusal of the court to charge the jury on the theory that the plaintiff entered the premises because the defendants merely refused to pay the rent, was proper, because not applicable to the evidence. The defendants themselves tstified that they gave up the place and moved away.

The plaintiff's resumption of the possession of the premises under the circumstances was not inconsistent with the idea that the lease was to be kept alive. The defendants were not dispossessed because they failed to pay rent. They voluntarily gave up the premises. The

plaintiff's subsequent possession was apparently for the purpose of preserving the property and preventing any further deterioration and damage to the defendants. There is nothing in the evidence to support the theory that the plaintiff accepted the defendant's abandonment of the premises and relinquished her claim to the rent. See 16 R. C. L. pp. 970, 971 and authorities cited.

We have discovered no error in the trial of this case, so the judgment is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.