### GULF COMPRESS CO. et al. v. MERCHANTS' COTTON PRESS & STORAGE CO.

### MERCHANTS' COTTON PRESS & STORAGE CO. v. HANSON et al.

(Circuit Court of Appeals, Sixth Circuit. April 9, 1920.)

Nos. 3321, 3322.

1. **Corporations** ☞559(1)—**Receivers** ☞92—**Contract of insolvent cannot be modified, except by approval of court.**

Where a corporation lessee of a cotton compress for a term of years became insolvent, and its property passed into the hands of a receiver, it had no power thereafter to make a contract modifying the terms of the lease, nor could such a contract be made by the receiver, except by approval of the court.

2. **Landlord and tenant** ☞108(1), 199½—**Lessor, on default of insolvent lessee, not denied recovery of rent for his refusal to operate compress indefinitely for lessee pursuant to his option under lease.**

Under a lease of a cotton compress for five years at an annual rental, payable in monthly installments, and authorizing lessor in case of default to take possession and operate the compress for account of lessee, crediting net profits on rental, or at its election to terminate the lease, its taking possession for operation did not obligate it to continue such operation during the entire term of the lease, when lessee was insolvent, but on further default, by failure to pay the deficiency of rent at the end of any operating season, it had the right to discontinue and terminate the lease without prejudice to its right to recover such past deficiency.

Cross-Appeals from the District Court of the United States for the Western Division of the Western District of Tennessee; John E. McCall, Judge.

Cross-appeals from a decree in equity on petition of the Merchants' Cotton Press & Storage Company in insolvency proceedings against the Gulf Compress Company; C. C. Hanson, receiver. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Cause No. 3321 is an original appeal by the Gulf Compress Company, hereinafter called the Gulf Company, and C. C. Hanson, receiver. Cause No. 3322 is a cross-appeal by the Merchants' Cotton Press & Storage Company, hereinafter called the Merchants' Company, from the same decree. Both of these appeals depend upon the same record, involve the same questions, and were heard and submitted together.

Prior to May, 1908, the Merchants' Company by separate written contracts, executed upon different dates, leased its uptown compress in the city of Memphis and the Riverside Press to the Gulf Company until September 1, 1913, at rentals aggregating $80,000, payable in equal monthly installments. On the 30th day of May, 1908, the District Court below, on petition of creditors, found the Gulf Company insolvent and appointed C. C. Hanson receiver. On the 21st day of July, 1908, on the application of the receiver, that court entered an order directing him to discontinue the operation of these plants and surrender the leased property to the lessor. On the 24th day of July, 1908, the receiver notified the Merchants' Company in writing that this order had been entered by the court and tendered return of the properties to the owner.

On the 1st day of September, 1908, the Merchants' Company replied to this written notice from the receiver, and on the same day wrote a separate letter to the Gulf Company, refusing to accept the return of the leased property, except under the terms of the leases, and among other things declared its intention of exercising its option to take over this property, but stipulated that in so doing it would operate the same for one year only. On the 4th of September the receiver replied to these letters questioning the right of the Merchants' Company to take over this property and operate it under the terms of the lease for a period of one year only, and calling attention to his letter of July 24, 1908, notifying the lessor that as receiver he had exercised his option not to carry out the lease contracts, and had made a formal surrender of the property covered by the leases in accordance with the order of the court appointing him receiver.

On September 5, 1908, the Merchants' Company wrote a letter to the Gulf Company, in which it recalled its letters of September 1st of that year to the receiver and to the Gulf Company, and further stated that it had decided to exercise without qualification the first alternative option set forth in paragraph 5 of the Riverside lease and paragraph No. 15 of what is known as the uptown lease.

Paragraph 15 of the lease for the uptown compress reads as follows:

"If at any time the tenant shall make default in the payment of the rent herein reserved, and such default shall continue for a period of 30 days after any installment of such rent shall become due and payable, and if at any time the tenant shall make default in the performance of any of its covenants herein contained, then and in such event it shall be lawful for the landlord, its successors or assigns, to re-enter upon all and every part of the demised premises, together with all improvements and betterments in the nature of fixtures, if any, made thereon by the tenant, and therefrom to remove all persons and resume possession and enjoyment of all of the said property which under this agreement shall have passed to the tenant, and to operate same as a cotton compress as freely as though this lease had never been made, and after all necessary outlays therefor, and for the maintenance of said cotton compress to retain the proceeds of such operation, and to apply the same upon the rentals herein reserved, and to hold the tenant, its successors and assigns, bound for any deficiency therein, or, at its election, the landlord may declare this agreement to be ended and all rights of the tenants to be determined, without prejudice to any cause of action which the landlord may have against the tenant for damage for breach of its covenants in this agreement. The rights given the landlord under this clause of the agreement are in addition to its rights under the bond provided for in the preceding clause."

Paragraph 5 of the Riverside lease is in substantially the same language.

The Merchants' Company thereupon took possession of the property covered by the leases to the Gulf Company and operated the same until September 1, 1910, which operation resulted in a deficiency in rentals for the year covering

the season of 1908–1909 of $27,886.70, and for the year covering the season of 1909–1910 of $69,286.31. At the end of the second season, and after the operation of these properties had resulted in a failure to earn profit sufficient to pay the full amount of the rentals, the Merchants' Company notified the Gulf Company that it would cancel the leases as of August 31, 1910, and upon that date or shortly subsequent thereto leased the same to another company for a rental of $50,000 a year.

On February 15, 1910, the Merchants' Company filed an intervening petition in the insolvency proceedings in the District Court, averring a default in the payment of the rent stipulated in the leases for the season of 1908–1909 in the sum of $28,611.70, and asking that it be declared a creditor to that amount, or such other amounts as may be estimated as and for damages sustained by reason of the breach of the lease contract. On July 25, 1916, the Merchants' Company filed an amended or supplemental petition, setting up its claim for $69,286.31, being the balance due for rentals for the year 1909–1910 not earned by the operation of the properties. On August 18, 1916, the Gulf Company filed its answer to the original petition.

These claims, together with all other claims filed against the insolvent Gulf Company, were referred to a master, with directions to take proof and report his findings of law and fact. This he proceeded to do, and filed a separate report on the claims of the Merchants' Company, allowing thereon the sum of $27,886.70 for deficit in rents in the first season 1908–1909, and $69,286.31 for the deficit in rents for the season of 1909–1910, aggregating $97,173.01. The District Court, upon the hearing of the exceptions to the master's report filed by the Gulf Company and C. C. Hanson, receiver, made and entered the following decree:

"I. That all the exceptions of the Gulf Compress Company and its receiver filed on the ——— day of November, 1916, in so far as they relate to the findings on the fact by the master touching the claims filed February 15, 1910, and July 25, 1916, be and the same are hereby overruled.

"II. That all the exceptions of the Gulf Compress Company and its receiver filed on the ——— day of November, 1916, in so far as they relate to the findings of law by the master touching the claim filed July 25, 1916, and the master's report allowing said claim for $69,286.31, covering the operations of the compresses for the season of 1909–1910, are hereby sustained, and the master's report as to said claim is not approved, but the same is by the court denied.

"III. That all the exceptions of the Gulf Compress Company and its receiver as to the findings of law, in so far as they relate to the claim filed February 15, 1910, for the sum of $27,886.70 are hereby overruled, and the master's report as to this claim is approved and confirmed.

"IV. That all the exceptions filed by the Merchants' Cotton Press & Storage Company to the master's report be and the same are overruled. And to such action of the court, the Merchants' Cotton Press & Storage Company then and there excepted.

"V. That in accordance with the written opinion heretofore filed herein that the said claim of the Merchants' Cotton Press & Storage Company for $27,886.70 be and the same is allowed as a general claim in this cause against the estate of the Gulf Compress Company."

C. L. Sivley, of Memphis, Tenn., for Gulf Compress Co. and Hanson.

T. K. Riddick and Wm. P. Metcalf, both of Memphis, Tenn., for Merchants' Cotton Press & Storage Co.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It appears from the memorandum opinion of the District Court, on exceptions to the master's report, that its refusal to allow the claim of the Merchants' Company for deficit in rentals for the season 1909–

1910 is based upon the conclusion that, in light of the correspondence between the parties just prior thereto, the Merchants' Company, by electing to take over and operate these properties, contracted with the Compress Company that it would continue such operation for the life of these leases; that its failure to do so was a breach of contract; that because of this breach it could not recover for that year, but that at the time it filed its petition for the amount of deficiency in rentals for the season 1908–1909 no such breach had occurred, and that therefore the rights of the parties must be determined as of the date of filing the petition, February 15, 1910, and for that reason approved and confirmed the master's report as to that item. These are the important questions, and perhaps, in view of the state of the record as filed in this court, the only questions, presented by the respective appeals.

It is evident that the letters themselves did not constitute a new contract between the parties. The Gulf Company had been declared insolvent, and its property was then being administered by the court for the benefit of its creditors, so that it had no capacity to contract with reference to this property. The receiver could not make or enter into a contract, except with the approval of the court appointing him; but no such contract was presented to the court for its approval. On the contrary, the court had ordered the receiver to discontinue operations and return these properties to the lessor. In obedience to that order the receiver had tendered possession to the Merchants' Company and had notified it that he would no longer operate the same. Nor was there any consideration for such new contract.

It is also apparent from the correspondence itself that no agreement was reached by the parties, for on the 5th day of September the Merchants' Company recalled its letters of September 1st and notified the Gulf Company that it had decided to exercise without qualification the first alternative option. In other words, it specifically refused to accept the receiver's interpretation of this contract, or to attempt any interpretation of its own, but declared its intention of taking over this property and operating it under the first alternative option contained in the leases, without qualification of any kind or character, so that, if these letters could be considered as negotiations leading up to a contract or agreement between the parties as to the effect of the exercise of this option, no such agreement was reached, and the attempt to do so was finally and conclusively abandoned. For these reasons these letters cannot be read into the leases, in order to change or modify their terms in any particular whatever, but, on the contrary, the rights, duties, and obligations of the lessor must be determined, not only by the provisions of the particular paragraphs under which the right of election was exercised, but also by all the terms and provisions of the entire contracts of which these paragraphs are part.

[2] The election by the lessor to take over and operate the properties brought into full force and effect paragraphs 5 and 15 of the respective leases, which prior thereto were not operative, and were not intended to be operative, until default in payment of rent occurred

and the lessor had elected to proceed under their provision. These paragraphs, 5 and 15, specifically provide that, if the profits arising from operation by the lessor should prove insufficient to pay the rentals, then the Gulf Company would be responsible to the Merchants' Company for the difference; but they do not specifically provide at what time or times the Merchants' Company might demand an accounting and payment of these deficits. Therefore it becomes important to consider the other provisions of the leases in order to ascertain the lessor's rights in that behalf.

The leases do not stipulate a sum in gross as rental for the entire term, but they do provide for a fixed and annual rental to be paid in monthly installments. This provision as to monthly installments might be waived by the lessor, without prejudice to its right to insist upon the payment of any balance due on the annual rental at the end of each year. It further appears from the evidence that this business is operated by seasons, beginning the 1st of September in each year and ending the 31st of August of the succeeding year. The lessor, during the time it operated this property, could not by any practical system of accounting have arrived at the exact amount of the deficiencies from month to month; this would appear only at the end of each season's business.

Therefore, if it were conceded that the election by the lessor to take over these properties, under the provisions of paragraphs 5 and 15 of the respective leases, required it to continue such operations for the full life of the leases, certainly it must follow that this obligation to continue operations upon the part of the lessor was predicated upon the promise and agreement by the lessee that it would pay to the lessor any deficit in the rentals over and above the profits earned by such operation, not at the end of the term, but monthly, as the contracts specifically provide. If, however the payment of monthly installments of the annual rentals was waived by the lessor, then the deficit in the fixed annual rental would become due and payable at the end of the year, when the amount of such deficit could be definitely fixed and ascertained from the accounts covering the business for the entire season.

The failure of the lessee to do this would be a further breach of contract on its part that would authorize the lessor to discontinue operations and recover from the lessee the amount of the deficits in rentals then accrued. The District Court evidently reached the same conclusion with reference to the right of the lessor to demand payment of the deficits and annual rentals at the end of each year; for upon no other theory could it have approved and confirmed the master's finding in favor of the Merchants' Company for the year 1908–1909.

These lease contracts do not admit of the construction that the lessor must operate these properties for the life of the leases at an enormous loss to itself, regardless of the failure of the lessee to pay the deficits in the annual rentals at the end of each season's business, upon the theory that it could recover the full amount of its losses at the end

of. the term from a lessee shown to be entirely solvent. Certainly it cannot be required to do this when it is conceded that the lessee was then insolvent and that its property was then in the hands of a receiver.

For the reasons above stated, the Merchants' Company, in discontinuing operations, did not commit any breach of the contracts on its part, and is therefore not precluded from recovering under the terms of these contracts.

It is claimed, however, that the disastrous result from the operation of these properties by the lessor, for the two years it did operate the same, was occasioned by carelessness, lack of ability, and refusal to adopt certain business methods of operation suggested by the receiver, that items for permanent repairs of property were charged as operating expenses, and that the evidence does not sustain the amounts found by the master to be due from the lessee to the lessor under these contracts.

These are questions of fact, upon which the master and the District Court were in agreement. It is also evident from the printed record that there is a direct conflict in the evidence relating to these issues and that there are many items of evidence introduced before the master that are not contained in this record. The books of account are not here. Neither is the amended nor supplemental petition filed by the Merchants' Company on July 5, 1916, covering the claim of that company for the deficit 'in rentals for the year 1909–1910 contained in the printed record. It is therefore impossible for this court to say, from the record before it, that the findings of facts returned by the master and approved and confirmed by the District Court are not sustained by evidence.

The judgment of the District Court is reversed, and the cause is remanded to that court, with directions to overrule all the exceptions to the master's report, and to approve and confirm the same, with interest on the amounts found due the Merchants' Company by the master from the date of the filing of his report.