## ERIE MALLEABLE CO. v. STANDARD PARTS CO.

### In re YOUNGER.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1924.)

No. 4074.

1. **Receivers ⚛══95—Cannot bind estate by contract without authority of court.**
   All persons dealing with a receiver are conclusively presumed to have knowledge of the extent of his powers, and that he cannot bind the funds in his hands by contracts without authority from the court.

2. **Receivers ⚛══90—Contract of employment not renewed by implication to bind receiver.**
   No implication can arise of the renewal of a contract of employment from the fact that the employé is continued in the employment of the receiver of the employer after the term of the contract has expired.

3. **Receivers ⚛══90—Failure of receiver to adopt unexpired contract of employment constitutes breach.**
   Damages are recoverable for breach of an unexpired contract of employment, which a receiver for the employer has declined to adopt. ·

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the Erie Malleable Company against the Standard Parts Company. John Younger, intervener, has appealed. Affirmed.

On the 10th day of March, 1920, John Younger, the intervening petitioner, entered into a written contract with the Standard Parts Company by the terms of which he was employed as vice president and assistant manager from February, 1920, to December 31, 1922, at a yearly salary of $20,000 and in addition thereto substantial participation in any profit-sharing plan or other stock distribution that might be inaugurated by the company. This contract was made and signed on behalf of the company by its president J. O. Eaton. While it does not appear that the board of directors specifically authorized or ratified the same, yet shortly thereafter Younger was elected vice president, and the corporation accepted his services and paid, from month to month, a proportionate part of the yearly salary named in the contract until September 1, 1921, when an order was entered in this cause appointing Frank A. Scott and J. O. Eaton, receivers of the Standard Parts Company, with authority to take immediate possession, manage its property, and do all things necessary in order to preserve the property and continue the business of the corporation, reserving to the court the right, by orders thereafter to be made, to direct and control the payment of all supplies, material, and other claims, and in all respects to regulate and control the conduct of the receivers. On April 30th an order was entered accepting the resignation of J. O. Eaton as one of the receivers, and continuing Frank A. Scott as sole receiver, with the same power and authority conferred upon both receivers by the original order.

Younger's contract with the Standard Parts Company was never expressly ratified by either receiver, but after their appointment Younger continued to perform services as general manager of the standard welding division of the

Standard Parts Company from the 15th of October, 1921, until shortly before the 1st of April, 1923, during all of which time he was paid by the receivers, Eaton and Scott and after the resignation of Eaton, by the receiver, Scott, a salary of $20,000 per year in equal monthly installments. In March of 1923, Scott, the receiver, having applied in the previous December for an order directing the sale of all the various properties of the Standard Parts Company, and an order having been issued to him to sell all of its property at public sale on the 29th day of March, 1923, notified Younger that he could take a leave of absence, with pay, and on and after the 1st day of April his services would no longer be required.

It is claimed on behalf of the intervening petitioner, Younger, that the receivers, by continuing him in their employ at the same salary, ratified and adopted the contract between Younger and the Standard Parts Company, and by reason of the fact that Younger remained in the employ of the receiver, Scott, after December 31, 1922, at which time his contract with the Standard Parts Company expired, the law implied a new contract of employment between Younger and the receiver for an additional year under the terms and conditions of the original contract.

The special master, appointed to take the testimony and report his findings of fact and conclusions of law, found, in substance, that neither receiver expressly ratified the Younger contract; that the receiver Eaton had personally made this contract as president of the company and presumably knew its terms; that receiver Scott had no knowledge of the existence of this contract; that Younger did not specifically call Scott's attention thereto, and at no time did Younger and the receivers, or either of them, consider or discuss its terms with a view to its affirmance or disaffirmance; that receiver Scott, in various meetings attended by Younger, stated he must be informed of the existence of all contracts; that on the 25th of January, 1921, Eaton and Scott, receivers, issued instructions to general managers in which it was stated "no contract for employment of executives or salesmen shall be entered into without consultation with the central office and the specific approval of one of the receivers"; that these instructions were prepared by Younger and sent to the different managers; that it was the general policy of the receivers of which policy Younger had full knowledge, that contracts running for any length of time would have to be approved by the District Judge; that in December, 1922, it became apparent that the property would have to be sold, and Scott, receiver, in Younger's presence asked for all outstanding contracts and obligations; that about this time Younger assisted the attorney for the receiver in preparing descriptions for the petition for an order of sale.

The special master further found and reported to the court that the receivers did not elect to affirm, adopt, or reject the contract between Younger and the Standard Parts Company, and that Younger remaining in the employ of the receiver, Scott, after the termination of the original contract, December 31, 1922, created no new contract by operation of law or otherwise for an additional year under the same terms of the original contract between Younger and the Standard Parts Company and recommended to the court that the intervening petition be dismissed. This report of the master was confirmed by the District Court, and a decree was entered in accordance therewith.

Wm. B. Woods, of Cleveland, Ohio (Woods, Lang & Eastman, of Cleveland, Ohio, on the brief), for appellant.

A. V. Cannon, of Cleveland, Ohio (White, Cannon & Spieth and A. V. Cannon, all of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). The only conflict in the evidence is in reference to the knowledge of Scott, receiver, as to the existence of this contract. While the master's

finding that Scott did not have knowledge of Younger's contract with the corporation is fully sustained by the evidence, that fact is not of controlling importance. Younger was paid for all the services performed by him during the term of that contract. His present cause of action is based upon a breach of an alleged new contract or a renewal of the original contract by implication of law, not for a like term, but for an additional year only.

In support of the proposition that, where an employé continues in the same service of an employer after the expiration of his contract of employment, without any new or different arrangement, a contract for another year upon the same terms arises by implication of law, counsel for intervener rely particularly upon Associated Newspaper v. Phillips (C. C. A.) 294 Fed. 845; Kelly v. Carthage Wheel Company, 62 Ohio St. 598, 57 N. E. 984; 26 Cyc. 976. The contract involved in one of these cases fixed the term of employment at one year. In the other case there was no definite term named in the contract but the salary was fixed at $3,000 a year and the court held that this was a contract for one year, so that the renewal of these contracts by implication, renewed all the terms of the contract as originally made at the same salary and for the same term of service.

[1] The contract of this intervener with the Standard Parts Company was not for one year, but, on the contrary, the term was definitely fixed from February, 1920, until December 31, 1922. That the salary to be paid in money during this time was $20,000 per year did not make it a contract for one year, as was held upon a different state of facts, in the Carthage Wheel Company Case, supra. If the rule announced in the cases first above cited has any application to the facts of this case, which question need not now be decided, then a renewal of this contract by implication would renew it for the same term and upon the same conditions named in the original contract. 26 Cyc. 976. In this respect there seems to be a substantial difference between the law applicable to renewal by implication of this class of contracts and the rule established as to the effect of a holding over by a tenant of lands after the expiration of a lease for years; yet, even in case of a receiver holding over after the termination of a lease for years, no new tenancy from year to year is implied, but, on the contrary, only a tenancy at will. Clark on Receivers, § 522; Dietrich et al. v. O'Brien, 122 Md. 482, 89 Atl. 717.

[1] It is unnecessary however, to discuss the distinction between this contract and the contracts involved in the cases cited. Whatever may be the law in reference to the effect of an employé continuing at the same salary, in the same service of an employer acting in a personal and individual capacity, after the expiration of the original contract of employment, it can have no application whatever to a contract with a receiver. One who deals with a receiver is conclusively presumed to have knowledge of the extent of his authority. In Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554, 562, 563, 14 Sup. Ct. 915, 918 (38 L. Ed. 819), the Supreme Court quoted with approval from Beach on Receivers, § 257, the following:

" * * * This rule is so well established that it has been decided that all persons contracting with a receiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their own peril, and that the court has unquestioned power to modify or even vacate his agreements."

See Cowdrey v. Railway Co., 93 U. S. 352, 23 L. Ed. 950; Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 479, 6 Sup. Ct. 809, 29 L. Ed. 963; Gulf Compress Co. et al. v. Merchants' Cotton Press & Storage Co. (C. C. A.) 265 Fed. 199; Robertson et al. v. Blower (C. C. A.) 263 Fed. 695; Lehigh Coal Co. v. Railway Co., 35 N. J. Eq. 426; High on Receivers, § 186.

The Supreme Court in Chicago Deposit Vault Co. v. McNulta, supra, further quoted with approval from Beach on Receivers the following:

"Although, as receiver, he may enter into negotiations and make such agreements as would be binding upon him as an individual, yet, in order to affect the fund in his hands, his acts must be ratified by the court."

See Clark on Receivers, § 522; Dietrich v. O'Brien, 122 Md. 482, 89 Atl. 717.

In this case the decree appointing these receivers granted to them no absolute right to enter into a long term contract, but, on the contrary, specifically reserved to the court authority to regulate and control the conduct of these receivers in all respects. If the receiver had actually entered into an express contract with Younger, it would not have been binding upon the trust estate represented by him until approved by the court.

[2] Even where the employer is acting in his individual capacity, with full power to contract for and on his own behalf, the legal presumption that arises by the continuation of the employé in the service after the expiration of the period, fixed in the contract and without any new arrangement may be rebutted by proof of facts showing a different intention. 26 Cyc. 976, 977, and cases there cited. In this case the master found that Scott had no knowledge whatever of the terms and conditions of this contract, and that Younger, although specifically required to present all contracts to the receiver, wholly failed to bring this contract to Scott's attention. For this reason the receiver cannot be held impliedly to have agreed to a renewal for a year of a three-year contract, of which he had no knowledge. Nor could Younger, in good faith, rely upon a contract by implication for the original term or for an additional year only. He knew that Scott was the receiver, and that his authority as such receiver might be terminated at any time at the pleasure of the court. He knew in December, 1922, shortly prior to the expiration of his contract with the corporation, that Scott, receiver, was contemplating an early sale of all of the property of the Standard Parts Company, and to that end counsel for the receiver, with the assistance of this intervener, was then preparing an application for a decree ordering such sale, which decree, directing the receiver to sell all of the property in his possession on March 29, 1923, was shortly thereafter entered. He also knew in December, 1922, that the receiver would have no further need of his services after this property was sold, and that any contract made by the receiver, renewing the original con-

tract for his services for the term named therein, or even for an additional year after December 31, 1922, would be wholly inequitable, improvident, and detrimental to the trust. Vanderbilt v. Central Ry. Co., 43 N. J. Eq. 669, 12 Atl. 188. These admitted facts would be sufficient to rebut any legal presumption that would arise by intervening petitioner continuing in the service after the expiration of this original contract, even if such presumption would obtain as against a receiver.

[3]. The fact that the receiver, with the approval of the court, compromised claims of Eaton and Torbenson, based upon unexpired contracts of employment with the Standard Parts Company, cannot affect the decision in this case, even if their respective claims involved the same state of fact. But it appears from this record that their claims were based solely upon the original contract of employment. If the receiver did not ratify and adopt these contracts, then the respective parties could recover damages for breach of contract. Baird Rubber & Trading Co., Inc. v. George D. Bates, Trustee, 296 Fed. 289, decided by this court March 14, 1924; Samuels v. Drew & Co. (C. C. A.) 292 Fed. 734, 739.

For this reason, the advisability of the adoption of a long term contract by a receiver depends on wholly different considerations than the making of a new contract for a period that may largely exceed the term of the receivership. If, on the other hand, there was a valid adoption by the receiver of an existing contract, he would be equally liable for its breach. In either event the compromise with Eaton and Torbenson may have been largely to the advantage of the estate.

For the reasons stated, the judgment of the District Court is affirmed.