## T. A. D. JONES CO. v. WINCHESTER REPEATING ARMS CO.

## SOUTHEASTERN INV. CO. OF SAVANNAH, GA., v. UNION & NEW HAVEN TRUST CO. et al.

### No. 35.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1932.

Philip Pond, Joseph I. Shrebnik, and Samuel H. Platcow, all of New Haven, Conn., for appellant.

Eli J. Blair, of New York City, and Bristol & White and Albert H. Barclay, all of New Haven, Conn., for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The appeal involves the validity of a claim presented to the receivers of the defendant, a Delaware corporation, appointed in a creditor's bill to sequester and distribute its assets. The only question is whether the claim was valid. The facts are as follows: One, Davis, was the lessee of certain premises in Jacksonville, Florida, which he in turn let to the Winchester Company, a Connecticut company, which after that company's assignment of the term, hereafter mentioned, conveyed its assets to the defendant, which assumed its liabilities. Davis thereafter conveyed his reversion to the claimant. (It will be clearer to disregard Davis's tenure and treat him as tenant in fee, as the parties have done.) The lessee—the Connecticut company—covenanted with Davis to pay the rent and granted him a right of re-entry upon breach of this, as of other covenants, not necessary to set forth; but Davis reserved no right, after re-entry, to relet for the benefit of the lessee, and charge it with the difference, nor did the lessee promise to pay him that difference. Pending the term, the Connecticut company executed an instrument to the Bayshore Company, a Florida corporation, under which that company took possession, and by the terms of which the Connecticut company assigned its interest in the premises for the whole term, and the Bayshore Company covenanted to pay the same rent to Davis's order, to perform all the other covenants, and to keep the Connecticut company indemnified against any breaches by it. Upon the Bayshore Company's default the Connecticut company might re-enter, the term should end, and the Bayshore Company must pay the difference between the rent reserved and the fair rental for the property.

Thereafter in January, 1931, receivers were appointed for the defendant, the Connecticut company's general assignee, and these receivers on March thirtieth served notice on the claimant that they "elected to cancel" the lease, "cancelled and discharged all further liability" of the defendant, and "surrendered up said premises and all right title and interest" in them. Correspondence followed between the claimant and the receivers' attorney, which it is not necessary to set out in detail, or to describe further than to say that each side apparently took the view that the Connecticut company's assignment to the Bayshore Company was a sub-lease. A few days after the receivers' notice of cancellation, and before the correspondence just mentioned, the Bayshore Company wrote the claimant that, having learned from the re-

ceivers of their "repudiation" of the lease, its own rights as "sub-lessee" were at an end, and that it would at once leave the premises. Thereupon the claimant in turn wrote the receivers that it would "take possession" for their account, try to relet, and credit anything received upon its "claim against you." After some ineffectual efforts to that end, it finally relet to the Bayshore Company at a lower rent, not reserving any claim in its own favor arising by virtue of the Connecticut company's assignment of the lease. The claim in suit is for the difference for the rest of the term between the original rent and that arising under the second lease. The judge thought that the defendant was only a surety for the Bayshore Company, and that the claimant's release of that company was a discharge.

█ The land being in Florida, the authoritative interpretation of the Connecticut company's assignment to the Bayshore Company is to be found in the decisions of the courts of that state. Buchser v. Buchser, 231 U. S. 157, 34 S. Ct. 46, 58 L. Ed. 166; Tyler v. U. S., 281 U. S. 497, 501, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758; Hinde v. Vattier, 5 Pet. 398, 491, 8 L. Ed. 168; Smith v. Staso Milling Co., 18 F.(2d) 736 (C. C. A. 2). In Florida (C. N. H. F. v. Eagle Crest Development Co., 99 Fla. 1238, 128 So. 844), an assignment of the whole term is not a sublease as between the lessor and the assignee, but a direct assignment, though the assignor—the former lessee—reserves a right of re-entry upon default of the assignee, and even though he is to receive a higher rent. This is the more general rule. Stewart v. Long Island R. R. Co., 102 N. Y. 601, 8 N. E. 200, 55 Am. Rep. 844. Therefore, as assignee of the original lease, the Bayshore Company was directly bound to Davis and later to the claimant, as assignee of the reversion, by the Connecticut company's covenants, so far as they ran with the land (Dunn v. Barton, 16 Fla. 765; C. N. H. F. v. Eagle Crest Dev. Co., 99 Fla. 1238, 128 So. 844, supra); among them that to pay rent. It is true that an assignee may relieve himself at any time by in turn assigning to another (Onslow v. Corrie, 2 Maddock, 330; McBee v. Sampson (C. C.) 66 F. 416; Durand v. Curtis, 57 N. Y. 7); his obligation arises from privity of estate, not from contract, and his assignment is effective, even though made for no other purpose than to evade liability. But some assignment is necessary; mere abandonment of the premises is not the equivalent. Blake v. Sanderson, 1 Gray (Mass.) 332; Seventy-Eighth Street, etc.,

Co. v. Purssell Mfg. Co., 166 App. Div. 684, 152 N. Y. S. 52; Tyler Commercial College v. Stapleton, 33 Okl. 305, 125 P. 443, 42 L. R. A. (N. S.) 162, Ann. Cas. 1916E, 837; Chicago Attachment Co. v. Davis Sewing-Machine Co. (Ill.) 25 N. E. 669; McLean v. Caldwell, 107 Tenn. 138, 64 S. W. 16; Moline v. Portland Brewing Co., 73 Or. 532, 144 P. 572). The Bayshore Company did not assign the term or try to, but merely moved out; it was still directly liable to the claimant for the rent.

█ In Florida as in several other states, upon a default in the payment of rent, the lessor may relet the premises for the account of the lessee, and charge him with the rent reserved as it accrues, less the amount received. Campbell v. McLaurin Inv. Co., 74 Fla. 501, 77 So. 277; Hickson v. Barton, 77 Fla. 105, 80 So. 745. Indeed, it is apparently his duty so to keep down his damages. This differs from the common-law, by which such a reletting is a re-entry, which ends the term, and with it the rent, which "issues" from the land. But the lessor may not safely agree with the lessee and a substitute that the substitute shall come in under a new lease, unless (we may for argument assume), he reserves his rights against the lessee. Certainly if he does not, it is a release of the lessee, and the lessor can look only to the substitute. Hewitt v. Adair (Fla.) 135 So. 560. This was in effect just what happened in the case at bar; because the new lease was made to the Bayshore Company itself, without reservation of the claimant's right against it to the old rent, which would indeed have been an absurdity. Thus the new lease extinguished the old term, and with it the only rent which the defendant had ever covenanted to pay.

█ The claimant answers that the receivers are estopped to say that the assignment was not a sub-lease. They had so declared, and the claimant, having acted upon that understanding by reletting the premises on the defendant's account, may insist upon treating the transaction throughout on that assumption. The basis of this position—which was apparently not raised below, and is not suggested in the assignment of errors—lies in the receivers' notice of repudiation, which was given under authority of the court, and in the later letters of their attorney. The notice was not indeed consistent with the notion that the lease had been assigned; the receivers could not in that event "surrender up" the premises, though they could if a sub-lease were outstanding. Moreover, it fairly ap-

776

pears that the attorney supposed that the assignment was a sub-lease, and perhaps that the claimant took its action in reliance upon his statement, and upon the receivers' notice. However, the receivers' attorney had no power to conclude the estate; nor indeed had the receivers themselves, except as authorized by the court. Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554, 14 S. Ct. 915, 38 L. Ed. 819; Erie Malleable Co. v. Standard Parts Co., 299 F. 82, 84, 85 (C. C. A. 6); Mills v. Sherman, 19 F.(2d) 114 (C. C. A. 6); Childs v. Empire Trust Co., 54 F.(2d) 981 (C. C. A. 2). Their declarations can at best stand on no higher footing than their contracts.

Nevertheless, if the evidence had stopped there, an estoppel might perhaps result from the notice, since that, as we have said, had been authorized by the court. If a party has no information as to the contents of a document except from the declarations of the other side as to its effect, his rights are quite other than when its contents are before him; we may assume for argument that the notice standing alone might create an estoppel. But the situation here was not that. The claimant knew that the Bayshore Company had been paying rent to Davis, and asked the receivers that the practice should continue. This might not indeed be enough; a sub-lessee might remit to the lessor, at once to discharge his own obligation and that of his sub-lessor. But on February 14, before any of the supposed representations, and long before the claimant had acted upon them, the receiver's attorney sent to the claimant the copy of a letter from the defendant to the Bayshore Company which read in part as follows: "Mr. Davis requests that all rents for the remainder of the lease be paid" to the claimant—Davis's assignee. "The lease" can only mean Davis's, and it must have been apparent that the Bayshore Company was in for the remainder of the term. This, as we have said, was consistent in Florida and most other states, not with a sub-lease, but only with an assignment, and the claimant thus learned the controlling fact. If it chose thereafter to accept an innocent, though mistaken, interpretation put upon the situation by the receivers, it did so at its peril. Brant v. Va. C. & I. Co., 93 U. S. 326, 23 L. Ed. 927; Sturm v. Boker, 150 U. S. 312, 336, 14 S. Ct. 99, 37 L. Ed. 1093; Crary v. Dye, 208 U. S. 515, 521, 28 S. Ct. 360, 52 L. Ed. 595; Oklahoma v. Texas, 268 U. S. 252, 257, 45 S. Ct. 497, 69 L. Ed. 937; Morgan v. Couchman, 14 C. B. 100. There was no basis for an estoppel.

The claimant urges that the case at bar is ruled by our decision in Re Mullings Clothing Co. (C. C. A.) 238 F. 58, L. R. A. 1918A, 539. That concerned a claim in bankruptcy arising from the lessee's repudiation of a lease already executed, but to begin in futuro. The land was in Connecticut where the lessor has power, as in Florida, to relet for the lessee's account and continue to collect the rent, less what he receives. Miller v. Benton, 55 Conn. 529, 13 A. 678. This the lessor did, and filed his claim for the difference. On the merits the case is distinguishable from that at bar, because the lessor had not ended the term, as here he had. We distinguished our earlier decision in In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270, where we held as to New York realty that claims for future rent were not provable in bankruptcy, even though the lease had a covenant allowing the lessor to re-enter, relet and charge the lessee with the difference. We need not say whether that distinction was valid. It is indeed difficult to see how the lessor's claim for future rent was there unconditional, even though the lessee had repudiated the lease before bankruptcy, if the claim was contingent in In re Roth & Appel. One contingency did not, indeed, exist—the necessary ending of the term by the lessor's re-entry; but that was by no means the only condition thought important in the earlier case. We would not by our silence therefore let it be supposed that the question is not still open whether the claim here, had it been good in substance, would be provable in bankruptcy. It is of course quite another question whether, though not provable in bankruptcy, it might be provable in a sequestration suit.

Decree affirmed.