622 So.2d 546 (1993)
HUDSON PEST CONTROL, INC., a Florida corporation, and Michael R. Hudson, Appellants,
v.
WESTFORD ASSET MANAGEMENT, INC., as the managing agent of the Richard Roberts Real Estate Growth Trust I, Appellee.
No. 92-2271.
District Court of Appeal of Florida, Fifth District.
July 30, 1993.
*547 R. Edward Cooley of Shepherd, McCabe & Cooley, Longwood, for appellants.
Emil A. Gasperoni, Jr. of Keidaish & Gasperoni, Longwood, for appellee.
W. SHARP, Judge.
Hudson Pest Control, Inc. (the tenant) and Michael Hudson (guarantor of the lease) appeal from a final judgment of $10,888.79 in damages, plus costs and attorney's fees, in favor of Westford Asset Management, Inc., managing agent for The Richard Roberts Real Estate Growth Trust I (the landlord). Hudson entered into a three (plus) year lease (from March 8, 1990 to January of 1994) to rent premises in a shopping center owned by the Trust. Michael Hudson guaranteed the lease individually. Appellants argue that the judgment should be reversed because the Trust took possession of the premises prior to the expiration of the term, and used it as a rental office. Thus, as a matter of law, Hudson argues, the Trust could not recover as damages any rent payments for the balance of the term after the Trust's repossession. Most of the damages awarded in this case relate to the unexpired term following repossession. We affirm.
In this case, there is no transcript of the testimony presented to the trial judge. We thus must give utmost credence to his fact findings, and assume there was the best imaginable evidence adduced to support them. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979); McClosky v. Martin, 56 So.2d 916 (Fla. 1951); Larjim Management Corp. v. Capital Bank, 554 So.2d 587 (Fla. 3d DCA 1989); Damkohler v. Damkohler, 336 So.2d 1243 (Fla. 4th DCA 1976). Only if the trial judge erred as a matter of law, should we reverse this case.
The record shows the Trust filed a complaint dated February 17, 1992 against Hudson seeking damages for breach of the lease. It alleged that Hudson deserted and vacated the premises on February 2, 1992, and defaulted on all subsequent rental payments due under the lease commencing with February 1992. In paragraph 11 of the complaint, the Trust alleged it had elected to terminate Hudson's right to occupy the premises, and it had recovered possession of the leased premises "for its own account." It sought damages for the balance of the term of the lease at a formula set by the lease  a formula designed to approximate the gross average monthly rent for the prior two years, multiplied by the remaining months in the lease term.
Hudson's answer claimed as a defense solely that the lease had terminated on January 31, 1992 when it vacated the premises. However, a document (executed by the parties) admitted at trial, indicates the lease term was extended from February 1, 1992 to January 31, 1994. And, a letter written to Hudson by the Trust's attorney also placed in evidence at the trial, states that the landlord expected rent would be *548 paid through the new expiration date, and it would file appropriate legal proceedings if rent was not paid.
After hearing the evidence in this case on August 19, 1992, the trial judge announced that the Trust was entitled to recover the full amount of the rent due for the balance of the unexpired term (from February 1992 through January 1, 1994), but if the Trust were able to rent the premises to another tenant, Hudson would be entitled to receive a credit against the rent owed. The judge made the following fact findings in the Final Judgment, dated August 24, 1992:
1. Plaintiff and Defendants entered into a Lease of the subject premises on March 8, 1990 and Amended the same on December 27, 1990.
2. At the time of the execution of the Amendment to the Lease the parties had no discussions about whether or not the Tenant would have the right to terminate the lease effective the last day of the first year under the Amendment.
3. Paragraph 5 of the Amendment to Lease which incorporates the provisions of the original lease not inconsistent therewith, does not operate to give the tenant the right to cancel the lease under the Amendment because the right to cancel was date specific, on or before January 1, 1991.
4. The attempt by the Tenant to terminate the lease was ineffective because it was not given in writing and was given subsequent to January 1, 1991, the time by which notice of termination was required to be given under the original lease.
5. The Landlord, on June 1, 1992, began to occupy the subject premises as it's [sic] leasing office and continued to do so through the date of trial.
6. Landlord's occupancy of the premises as it's [sic] leasing office does not operate to terminate it's [sic] right to collect future rent from the Tenant because the evidence is the Landlord continues to attempt to rent the subject premises and would move therefrom if a suitable Tenant were found and because the occupancy of these premises was only a matter of convenience and was of no benefit to the Landlord as other vacant suites exist in the subject Center which the Landlord could occupy as it's [sic] leasing office, and the evidence shows that the subject premises is more likely to be leased out on Defendants [sic] account, because of it's [sic] use as the leasing office.
On appeal, appellants argue that the landlord cannot recover any unaccrued rent as damages for that period of time after it retook possession of the premises and used it as its rental office in the shopping center. Apparently, the thrust of Hudson's defense was different at trial than as asserted in its answer. Similarly, we must assume that the Trust receded from its position taken in its complaint that it repossessed the premises, after the tenant's abandonment, for its own account. Based on the trial judge's findings at trial, it offered evidence and took the position that it reclaimed possession of the premises for the tenant's account. Parties may raise new legal issues at trial with the other party's consent and the court's indulgence, or may amend the pleadings.[1] We assume that occurred here.
It has long been established by case law in Florida that a landlord has three options when faced with a tenant who defaults on rent payments and vacates the rented premises before the end of the term of the lease:
He may treat the lease as terminated and retake possession exclusively for his own purposes, or, he may retake possession for the account of the tenant, holding the latter responsible in general damages measured by the difference between the stipulated rent and any amount the lessor is able to recover in good faith from his re-letting. As a further alternative *549 the lessor may do nothing at all and sue the lessee as each rent installment matures or for the full amount of the rental due when the term ultimately ends.
Wagner v. Rice, 97 So.2d 267, 270 (Fla. 1957).[2]
The first option results in the landlord's not being able to sue for damages measured by the rent payments which accrue in the future after the landlord has retaken possession. See Geiger Mutual Agency, Inc. v. Wright, 233 So.2d 444 (Fla. 4th DCA 1970); Deringer v. Pappas, 164 So.2d 569 (Fla. 3d DCA 1964). The rationale for this result is that the lease has been "surrendered" by either the actions of the parties or their expressed intent.[3] Since a surrender extinguishes the leasehold estate, all of the tenant's unaccrued or future rent obligations likewise evaporate. See Wagner v. Rice; Fla.Jur.2d Landlord and Tenant §§ 114; 149 (1982); Stenor, Inc. v. Lester, 58 So.2d 673 (Fla. 1951).
If the second option is selected, the leasehold estate remains in existence, to the extent that the landlord can hold the tenant for damages for the balance of the lease term following the landlord's recovery of possession. Fla.Jur.2d Landlord and Tenant § 124 (1982). However, the landlord then has a duty to mitigate the tenant's damages by making a good faith effort to release the property at a fair rental. And, the landlord must credit the tenant for any rents obtained from another tenant, during the lease term.[4]
Apparently, the third option is rarely chosen. We have discovered no Florida appellate cases where this option was found to have occurred. Indeed it seems at odds with the law in other jurisdictions, as well as the second option, which clearly requires a landlord to mitigate damages. See Annotation, Damages Mitigation by Landlord, 21 A.L.R.3d 534 (1968).
Thus, the issue in this case is whether the parties embarked on the first or the second option. Most authorities say that this determination (if an express surrender is not involved) depends upon the circumstances of the case.[5] And, it is a factual determination; one for the trier of fact.[6]
Since we do not have an appellate record in this case, we must posit the witnesses for the Trust (landlord) testified no surrender of the lease was intended and that Hudson (the tenant) was so informed.[7] We must also accept as established fact because it was so found by the trial judge, that the Trust was acting in Hudson's best interests by retaking possession of the vacated premises, perhaps to keep it secure and safe from vandalism.[8] Further, the trial judge found that by furnishing and occupying the office space, the Trust increased the attractiveness of the premises and the likelihood it would quickly be re-let *550 to another.[9] The court also found the Trust was not benefiting from its use of the space because the landlord had other vacant spaces in the same shopping center it could easily use rather than Hudson's and it was prepared to move out quickly, if a new tenant were found.
Hudson argues a surrender of the lease occurred, as a matter of law, when the Trust took possession of the leased premises and used it in any regard for its own business purposes. This is too rigid a view of constructive surrender. In Colonial Promenade v. Juhas, 541 So.2d 1313 (Fla. 5th DCA 1989), we said the nature of the landlord's use of the premises after a defaulting tenant abandons them, governs the availability of the landlord's remedy:
If the landlord resumes possession and utilizes them for purposes other than recovery of the rental due him under the contract, then and only then is he foreclosed from suit for the balance because such would inequitably constitute a double recovery.
Colonial Promenade at 1315.
Occupancy of the premises by the landlord and its operation and use by the landlord does not under all circumstances amount to a surrender by operation of law. In Hickson v. Barton, 77 Fla. 105, 80 So. 745 (1919), the court held no surrender by operation of law occurred when the landlord took possession of a leased theatre, partially to protect it from abuse and deterioration, and occasionally renting it for a night for some special purpose. Similarly in Kanter v. Safran, 68 So.2d 553 (Fla. 1953), the court held that the landlord did not accept a surrender of the lease of a hotel when the landlord occupied and ran it for a season. The landlord proved he retook possession of the hotel so he could repair and refurbish it, and also so he could seek a suitable tenant replacement.[10] However, in the final, Kanter v. Safran, 99 So.2d 706 (Fla. 1958) case, the landlord lost because he was unable to prove any losses, but not because of surrender by operation of law.
AFFIRM.
DIAMANTIS, J., concurs.
GRIFFIN, J., dissents without opinion.
NOTES
[1] Fla.R.Civ.P. 1.190; Hatcher v. Chandler, 589 So.2d 428 (Fla. 1st DCA 1991); Maestrelli v. Arrigoni, Inc., 476 So.2d 756 (Fla. 5th DCA 1985).
[2] See also Williams v. Aeroland Oil Co., 155 Fla. 114, 20 So.2d 346 (1944); Coast Federal Savings & Loan Ass'n v. Deloach, 362 So.2d 982 (Fla. 2d DCA 1978).
[3] Fla.Jur.2d Landlord and Tenant §§ 107; 110 (1982); Kanter v. Safran, 68 So.2d 553 (Fla. 1953); Babsdon Co. v. Thrifty Packing Co., 149 So.2d 566 (Fla. 3d DCA 1963).
[4] Coast Federal Savings & Loan Ass'n. v. Deloach, 362 So.2d 982 (Fla. 2d DCA 1978); Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enterprises, Inc., 235 So.2d 344 (Fla. 2d DCA 1970); Fla.Jur.2d Landlord and Tenant § 154 (1982).
[5] Kanter v. Safran, 68 So.2d 553 (Fla. 1953); Boyer, Florida Real Estate Transactions, Vol. II § 36.10.
[6] See Hyman v. Cohen, 73 So.2d 393 (Fla. 1954); Grove Restaurant & Bar, Inc. v. Razook, 571 So.2d 596 (Fla. 2d DCA 1990); Colonial Promenade v. Juhas, 541 So.2d 1313 (Fla. 5th DCA 1989); Hulley v. Cape Kennedy Leasing Corp., 376 So.2d 884 (Fla. 5th DCA 1979); Babsdon Co. v. Thrifty Packing Co.; Diehl v. Gibbs, 173 So.2d 719 (Fla. 1st DCA 1965); Katz v. Kenholtz, 147 So.2d 342 (Fla. 3d DCA 1962).
[7] Expressed intent not to accept a surrender is an important factor in finding no surrender occurred. 49 Am.Jur.2d Landlord Tenant § 1107; Boyer at 36-74.
[8] A landlord can retake possession to protect premises. 49 Am.Jur.2d Landlord and Tenant § 1104 (1982); Hickson v. Barton, 77 Fla. 105, 80 So. 745 (1919).
[9] Re-entry for the purpose of re-letting an abandoned premise is "equivocal", but not surrender as a matter of law. 49 Am.Jur.2d Landlord Tenant § 1111.
[10] See also In Lenco, Inc. v. Hirschfeld, 247 N.Y. 44, 159 N.E. 718 (1928), cited by Kanter, 68 So.2d at 560.