**In re PAVCO ENTERPRISES, INC., Debtor.**

**Bankruptcy No. 94–04079–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 2, 1994.

Douglas J. Burns, St. Petersburg, FL, for debtor.

Buddy Ford, Tampa, FL, for Centres of Gulfside, Ltd.

## ORDER ON MOTION FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case and the matter under consideration involves a dispute between the landlord, Centres of Gulfside, Ltd. (Landlord), a limited partnership, and PAV-CO Enterprises (Debtor), a Florida corporation. The controversy centers around the contention of the Landlord that a certain lease executed by the Landlord and the Debtor on August 5, 1993 was effectively terminated prior to the commencement of this Chapter 11 case, thus the lease is no longer property of the estate of this Debtor and not subject to assumption by the Debtor. The unusual twist of this controversy is due to the fact that the Landlord, itself, is a Debtor seeking relief under Chapter 11 in this Court. The resolution of the matter under consideration requires the interpretation of a lease and the Florida statute which governs the relationship between landlords of tenants of commercial leases, Florida Statute § 83.56.

The facts as established by the evidence are basically without dispute. The salient facts can be summarized as follows: The lease under consideration was executed on August 5, 1993 and called for monthly payments of $5,000. In addition, the lease required the tenant to pay common area maintenance charges of $1,500, although the amount inserted in Exhibit D attached to the lease is $1,650 per month. The common area maintenance provision of Exhibit D is unsigned and uninitialed. The Debtor made the following payments:

December 1, 1993 $1,000.00 (Def's Exh. No. 3)
(partial payment toward November rent)

December 15, 1993 $762.67 (Def's Exh. No. 7)
(Not a rent payment but money paid to the City of Port Richey for a water bill)

December 27, 1993 $4,327.33 (Def's Exh. No. 6)
(Replacement check for previous check # 1017 which was dishonored by the bank)

December 29, 1993 $3,000.00 (Def's Exh. No. 4)

January 2, 1994 $2,000.00 (Def's Exh. No. 5)
(It appears that the combination of these two checks was to pay the January rent in full)

The record is clear that the Debtor made no rent payments for February, March or April. The Petition for Relief under Chapter 11 was filed on April 26, 1994.

The record reveals that on February 18, 1994, the attorney for the Landlord mailed a notice of default and demand of payment, addressed to PAVCO Enterprises, Incorporated, attention of Mr. David Pavlick, 3268 San Jose Street, Clearwater, Florida 34619. The notice indicated that the total amount of the delinquency was $22,655 for the premises located at 6701 Cinema Drive # 1, Port Richey, Pasco County, Florida, leased by the Debtor. The notice in relevant part states, "I demand payment of the rent or possession of the premises within three days (excluding Saturday, Sunday and legal holidays) from the date of delivery of this notice to you, that is, on or before February 24, 1994." Underneath, capitalized and underlined, *"FAILURE TO PAY MONIES DUE WILL CAUSE EVICTION PROCEEDINGS."*

There is nothing in this record which indicates an express intent to terminate the lease under consideration. The notice merely stated the amount of the past due rent, made a demand for payment of the same within three days and stated that if the past due rents were not paid, the Landlord would institute eviction proceedings.

These are the undisputed facts based on which it is urged by the Landlord that this

lease has been effectively terminated and, therefore, by virtue of § 541(b)(2) it was no longer the property of the estate on the date of commencement of the case. Thus, this Debtor is incapable to assume the same, having lost all cognizable interest in this commercial lease. In support of this proposition, the Landlord relies, in addition to the default notice, on Article XI of the Lease entitled "Default by Tenant," which provides inter alia as follows:

Section 11.2, LANDLORD'S RIGHTS ON DEFAULT.

In the event of default, the Landlord may terminate this Lease by giving written notice to the Tenant of its election so to do, which notice of termination may be incorporated in the notice of default, and upon service of such notice or the failure to cure the default within the time prescribed in the notice, this Lease shall forthwith terminate.

■ Clearly, it is the well established law of this State governing the relationships of landlords and tenants on commercial leases that upon default the landlord has the following options: "(1) the landlord may treat the lease as terminated and retake possession for its own account, thus terminating any further liability on the part of the lessee; (2) the lessor may retake possession of the premises on account of a lessee, holding the lessee liable for the difference between rental fixed by the lease and the amount which in good faith the lessor was able to recover as mitigation from reletting the premises; or (3) the lessor may stand by and do nothing, holding lessee liable for the full rent due as it matures, which means all remaining rent due if there is an acceleration clause, and the lessor has the right to exercise acceleration." *Coast Federal Savings & Loan Association v. DeLoach,* Fla.App., 362 So.2d 982 (1978). *Jimmy Hall's Morningside v. Blackburn & Peck Enter.,* 235 So.2d 344 (Fla.1970). These provisions are codified, to some extent, by the default provision of the Florida Statute, § 83.56, subsection (3) which provides, inter alia, that if a tenant fails to pay rent when due and the default continues for three days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by the landlord for payment of the rent or possession of the premises, the landlord may terminate the rental agreement.

The Statute and the lease are clearly susceptible to two interpretations. It is Debtor's position that in order to effectively terminate the lease, the lease, itself, gave nothing but an option by using the term "may" and clearly requires—as the statute requires—either that there are two separate documents, the notice of default and a separate document indicating an affirmative statement "the lease is terminated," or one single document incorporating the express language that the lease is terminated with the notice of default.

It is the Debtor's position that none of the requirements of the Statute have been met because the notice of default does not contain a single affirmative statement regarding termination. In addition, the Debtor contends that the Notice is not an effective notice of termination, as the mere expression of an intent to proceed and file in a County Court a distress proceeding, evicting the tenant does not constitute notice of termination.

■ Considering the three options of a landlord, it is clear that regaining the premises is not tantamount to termination of the lease. Termination of a lease triggers consideration of all rights under the lease of either party leaving the landlord with the one remedy to retake possession of the premises for its own account.

■ On the other hand, if the landlord merely retakes the premises on account of the tenant, the lease is not terminated and the landlord may enforce the rights flowing from the lease, that is to hold the tenant liable for the full amount of the rent due under the lease. According to the last option available, he may stand by and do nothing and sue the tenant as each installment becomes due or for the full amount if the landlord has a right to accelerate. *4 Adkins, Florida Real Estate Law and Procedure, § 106.04 at p. 1970 (1960);* see also, *Kanter v. Safran,* Fla.1953, 68 So.2d 553, 557–58; *Diehl v. Gibbs,* Fla.App.1965, 173 So.2d 719, 720.

To overcome the failure to notice termination of the Lease, in the documentation involved here, the Landlord relies on the language in the Paragraph cited earlier, 11.02 of the lease, which states that, "[U]pon service of such notice or the failure to cure the default within the time prescribed in the notice, this Lease shall forthwith terminate."

This provision in the lease is not consistent with the Statute. In support of the proposition that the language of the lease overrides the Statute, the Landlord cites a case from the District Court in the Middle District of Florida decided by Judge Fawsett, the case of *In re Hickory Point Industries, Inc.*, 83 B.R. 805 (M.D.Fla.1988). In *Hickory* the landlord issued a letter and stated as follows:

"This letter is to notify you that since you have not made the rent payment due on the 1st day of December 1984 and the 1st day of January 1985, [the landlord] is terminating that certain lease agreement made between [the landlord] and Hickory Point Industries."

On June 13, 1985, the Bankruptcy Court concluded that the letter did not effectively terminate the lease because the landlord did not comply with the three-day notice provision of Florida Statute § 83.56. On appeal the District Court held that "under Florida law, language in a commercial lease authorizing a landlord to terminate without notice to a tenant took precedence over contrary notice provisions of a Statute," where the landlord expressly stated the intention to terminate.

In sum, absent an express affirmative language in the present case indicating termination, this Court is constrained to conclude that this lease has not been effectively terminated and is still property of the estate.

All through these proceedings, it was maintained by the Debtor that the reason it was not paying the rent was because of some dispute about the water bills and the Debtor's obligation to install a separate water and electric metering system called for by the lease. In addition, the Debtor contends that it was unable to restore water services because the Landlord refused to consent to restore the water service and this in turn justified the Debtor's refusal to pay the rent required by the lease. While this might be a basis to assert a claim for damages, it is of no consequence because the fact that there is a dispute between a landlord and a tenant concerning certain covenants under a lease does not furnish any legal excuse from paying the rent. *Helga Skin Therapy, Inc. v. Dead River Properties, Inc.*, 478 So.2d 95 (Fla. 2d DCA 1985). This conclusion, however, should not be interpreted or construed to mean that the Debtor is not entitled to assert a claim for damages against the landlord for constructive eviction if so deemed to be advised.

This record leaves no doubt that the Debtor was in default under the lease. It is equally clear that notwithstanding, the lease has not been effectively terminated prior to the commencement of the case and, therefore, the lease was and still is property of the estate. Having concluded that the lease is still property of the estate, it is clear that before this Debtor is permitted to assume the lease, it must comply with all provisions of § 365(d) of the Bankruptcy Code which requires the Debtor to perform all covenants and perform all obligations under the lease pending assumption, including payment of rent. However, whether or not this Debtor will be able to assume the lease and be able to comply with the requirements for assumption set forth in § 365(b) of the Code is not before this Court.

As noted earlier, the Landlord also filed a Motion and sought relief from the automatic stay in order to resume the state court eviction proceeding and enforce the final judgment entered by the county court. In light of the fact that the final judgment was entered after the commencement of the case it is clearly a nullity and has no legal force and effect. For reasons stated, the Debtor shall be given the opportunity to show that it is able to comply with the provisions of § 365, and therefore, the Motion for Relief from Stay should be denied provided the Debtor furnishes the following adequate protection to the Landlord:

(a) Cure all post-petition arrearages not later than August 15, 1994;

(b) Pay the rent due for the month of July by the end of the month; The Debtor shall have 15 day grace period;

(c) Commencing in September the rent shall be paid on the first day of each month.

In the event the Debtors fails to furnish adequate protection as outlined above, the Landlord shall be entitled to file an affidavit of default, serve telephonic notice on the Debtor and unless, within 48 hours, the Debtor cures the default or requests a hearing by showing acceptable evidence, this Court will enter an order lifting the automatic stay.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from Stay be, and the same is hereby, denied provided that the Debtor furnish adequate protection as outlined above.

DONE AND ORDERED.