# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

Case No. 5D2021-1378
LT Case No. 2017-CA-000689-15-G

———————————————————

WILLIAM HEFLEY and AIMEE J.
HEFLEY,

    Appellants,

    v.

CHRISTOPHER HOLMQUIST,

    Appellee.

———————————————————

On appeal from the Circuit Court for Seminole County.
Michael J. Rudisill, Judge.

William M. Hefley, Lake Mary, and Michael S. Tuma, of Michael
S. Tuma, P.A., Deland, for Appellants.

Lindsey Lawton, of The Brownlee Law Firm, P.A., Tallahassee,
and Michael M. Brownlee, of The Brownlee Law Firm, P.A.,
Orlando, for Appellee.

February 6, 2025

HARRIS, J.

    This appeal arises from a highly contentious and over-
litigated landlord/tenant dispute. The tenants below, William and
Aimee Hefley (the "Hefleys") are both licensed attorneys who
rented a home from Christopher Holmquist. The lease was for a

five-year term. Claiming that the Hefleys breached the lease by vacating the property and ceasing rental payments with approximately nine months remaining, Holmquist filed a complaint for breach of the lease agreement. The damages requested by Holmquist included unpaid rent as well as compensation for physical damage to the property.

The case was eventually heard by a jury and after three days of conflicting testimony, the jury returned a verdict accepting Holmquist's arguments and rejecting the defenses raised by the Hefleys. The jury awarded Holmquist $21,936.75 in damages, and the trial court entered a final judgment in that amount.

This final judgment was, not surprisingly, met with numerous post-judgment motions, including a motion to set aside the verdict. Finding that the evidence did not support the damages awarded, the trial court granted the motion, reduced the damages awarded to just over $6,000, and entered an amended judgment in that amount. Both the Hefleys and Holmquist have appealed that judgment.

In their direct appeal, the Hefleys raise a litany of claimed legal errors and issues on appeal. We find each of the issues raised by the Hefleys to be meritless or legally and factually insufficient to establish reversible error.

As to the cross-appeal, we agree with Holmquist that it was error for the trial court to set aside the jury's verdict in that there was ample evidence presented below from which a reasonable jury could find in favor of Holmquist and which supports their determination of damages. Because the trial court erred in setting aside the verdict and entering an amended judgment, we reverse and remand with instructions to reinstate the original verdict and to enter judgment in accordance therewith.

REVERSED AND REMANDED WITH INSTRUCTIONS.

EDWARDS, C.J., concurs.
KILBANE, J., concurs in result only, with opinion.

2

KILBANE, J., concurring in result.

I concur with the majority's affirmance of the direct appeal and reversal of the cross appeal but write to address the landlord's choice of remedy pursuant to section 83.595, Florida Statutes (2016). Because a reasonable jury could find the landlord chose to "stand by and do nothing" after the tenants abandoned the premises—consistent with section 83.595(3)—the court's order setting aside the jury verdict and subsequent amended judgment should be reversed.

## Facts

Christopher Holmquist leased his residential property (the "Premises") to William and Aimee Hefley for a five-year term from April 1, 2012, to April 1, 2017. More than four years into the lease agreement (the "Lease"), the relationship between the parties soured. In June and July 2016, Holmquist emailed the Hefleys requesting to inspect the Premises. In response, the Hefleys sought to terminate the Lease as of July 31, 2016, which Holmquist declined. Thereafter, the Hefleys abruptly moved out. When Holmquist attempted to inspect the property, he could not enter without the assistance of the sheriff's department because the locks had been changed. Upon entry, he found the Premises "filthy" and in disrepair.

On August 1, 2016, when Holmquist next returned to the Premises, the front door and several windows were wide open, no keys were left behind, and the master bedroom door could not be opened without a locksmith. Holmquist notified the Hefleys that he expected them to fulfill their obligations under the Lease and asserted rent was still due for the remainder of the lease term. Holmquist took immediate measures to secure the Premises including changing the locks and alarm code. He also began cleaning, painting, affecting repairs, and replacing the carpet. Once the Premises was restored, Holmquist placed a bed and dresser in the home for staging purposes. In September 2016,

3

Holmquist also took shelter in the Premises for two nights while under threat of a hurricane.

At no point did the Hefleys attempt to return or seek access to the Premises after July 31, 2016, as they had signed a five-year lease on another property with a start date of July 1, 2016.

In March 2017, Holmquist sued the Hefleys for damages including the cost of repairs as well as unpaid rent and fees that had accrued from their last payment until February 2017, when the Premises was ultimately sold. In his pleadings, Holmquist sought damages including unpaid rent and late fees, but did not indicate his chosen remedy under section 83.595, Florida Statutes. In response to the Hefleys' interrogatories, Holmquist answered that he retook possession of the Premises for the account of the tenant while attempting to relet it consistent with section 83.595(2). At trial, however, he asserted this answer was a mistake because he always intended to sell the Premises—not relet it—and his efforts were to mitigate the damage and return it to a habitable state. He asserted his chosen remedy was to leave the Premises vacant while trying to sell it, which he asserted fell under section 83.595(3).

At trial, the Hefleys moved for directed verdict at the close of Holmquist's case asserting they had no liability for the accrued rent because there was no evidence that Holmquist stood by and did nothing consistent with section 83.595(3). The court denied the motion. The Hefleys renewed their motion at the end of trial, which the court again denied.

The jury returned a verdict in favor of Holmquist finding, as relevant here, the Hefleys unreasonably withheld consent for Holmquist to inspect the Premises and abandoned the Premises after July 31, 2016, while Holmquist did all or substantially all the things required of him under the Lease. The jury awarded Holmquist damages including accrued rent pursuant to section 83.595(3). The final judgment was rendered consistent with the verdict with total damages of $21,396.75.

The Hefleys moved to set aside the verdict asserting—among other things—that the evidence established Holmquist resumed

4

possession of the Premises on August 1, 2016, when he took steps to protect, restore, and sell it. The trial court granted the Hefleys' motion only regarding Holmquist's choice of remedy and entered an amended judgment precluding Holmquist from being awarded the accrued rent. Specifically, the court found:

> [T]here was no evidence or reasonable inference which supported the jury's verdict that [Holmquist] chose the third breach of contract remedy under section 83.595, Florida Statutes, and stood by and did nothing following [the Hefleys'] material breach of the lease agreement. Rather, the evidence established that [Holmquist] chose the first remedy, and treated the lease agreement as terminated and retook possession of the house for his own account, thereby terminating any further liability of the [Hefleys].

The damages were reduced to $6,039.23. Both parties timely appealed.

## Analysis

The trial court's ruling on a motion for judgment in accordance with a motion for directed verdict is reviewed de novo. *Martinez v. Lobster Haven, LLC*, 320 So. 3d 873, 880 (Fla. 2d DCA 2021) (citing *Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 143 (Fla. 4th DCA 2018)). Issues of contractual and statutory interpretation are also reviewed de novo. *Duffner Fam. 2012 Irrevocable Tr. v. Lee R. Duffner Revocable Living Tr.*, 394 So. 3d 236, 239 (Fla. 3d DCA 2024) (citing *Hammond v. DSY Devs., LLC*, 951 So. 2d 985, 988 (Fla. 3d DCA 2007)).

When a jury verdict has been set aside, the appellate court applies the same rules that the trial court uses in considering a motion for directed verdict at the close of the evidence and in a post-trial motion. *Martinez*, 320 So. 3d at 880–81 (citing *Greene v. Flewelling*, 366 So. 2d 777, 779 (Fla. 2d DCA 1978)). "[T]he court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the

evidence must be indulged in favor of the nonmoving party." *Johnson v. Garrett*, 386 So. 3d 1023, 1027 (Fla. 6th DCA 2024) (quoting *Sims v. Cristinzio*, 898 So. 2d 1004, 1005–06 (Fla. 2d DCA 2005)). The motion should be granted "only if no view of the evidence could support a verdict for the nonmoving party and the trial court therefore determines that no reasonable jury could render a verdict for that party." *Lemon v. People's Tr. Ins. Co.*, 344 So. 3d 56, 59 (Fla. 5th DCA 2022) (quoting *Universal Prop. & Cas. Ins. Co. v. Motie*, 335 So. 3d 205, 206 (Fla. 5th DCA 2022)).

### A. Section 83.595, Florida Statutes

Section 83.595 provides a landlord with the choice of enumerated remedies after a tenant breaches the rental agreement or attempts to terminate the agreement early. § 83.595, Fla. Stat. The landlord may seek a remedy in any of the following circumstances: the tenant abandoned the dwelling; the tenant surrendered possession of the dwelling to the landlord; or the landlord obtained a writ of possession after tenant's breach of the parties' agreement. *See id.*; *Duffner*, 394 So. 3d at 240 n.1 ("[A]bandonment, surrender, or procurement of a writ of possession is a prerequisite to suit.").

Thereafter, the landlord may select one of the following remedies and choose to:

> (1) Treat the rental agreement as terminated and retake possession for his or her own account, thereby terminating any further liability of the tenant;
>
> (2) Retake possession of the dwelling unit for the account of the tenant, holding the tenant liable for the difference between the rent stipulated to be paid under the rental agreement and what the landlord is able to recover from a reletting . . . ;
>
> (3) Stand by and do nothing, holding the lessee liable for the rent as it comes due; or

6

(4) Charge liquidated damages . . . or an early termination fee to the tenant . . . .

§ 83.595, Fla. Stat.

Under the first remedy, a landlord may decide it no longer desires to enforce the lease, choose to "[t]reat the rental agreement as terminated," and resume exclusive possession of the premises for its own purposes. *Id.* § 83.595(1). Under this remedy, the tenant would not be liable for any rent that accrued after the repossession. *Id.* Similarly, in accordance with the terms of the rental agreement, the landlord could terminate the tenancy and resume exclusive possession early under the fourth remedy.[1] In that case, however, the tenant would be liable for specified damages. *Id.* § 83.595(4)(a) ("In addition to liquidated damages or an early termination fee, the landlord is entitled to the rent and other charges accrued through the end of the month in which the landlord retakes possession of the dwelling unit and charges for damages to the dwelling unit.").

Upon selection of the second remedy, the landlord would not treat the rental agreement as terminated but instead choose to hold the tenant liable for a lesser amount: the difference between the rent due under the original lease agreement and the amount recovered by reletting the premises to another. *Id.* § 83.595(2); *see also Hudson Pest Control, Inc. v. Westford Asset Mgmt., Inc.*, 622 So. 2d 546, 549 (Fla. 5th DCA 1993) (noting under this option "the leasehold estate remains in existence" but landlord has duty to mitigate tenant's damages through good faith effort to relet property); *In re PAVCO Enters., Inc.*, 172 B.R. 114, 117 (Bankr. M.D. Fla. 1994) ("[I]f the landlord merely retakes the premises on account of the tenant, the lease is not terminated and the landlord may enforce the rights flowing from the lease, that is to hold the tenant liable for the full amount of the rent due under the lease.").

---

[1] The fourth remedy "is available only if the tenant and the landlord, at the time the rental agreement was made, indicated acceptance of liquidated damages or an early termination fee." *Id.* § 83.595(4).

7

The third remedy provides that a landlord may choose to "stand by and do nothing," holding the tenant liable for rent accruing under the lease agreement. § 83.595(3), Fla. Stat. There does not appear to be any Florida appellate cases in which a landlord has been found to have chosen the third remedy since its codification in the Florida Statutes. *See Hudson Pest Control*, 622 So. 2d at 549 ("Apparently, the third option is rarely chosen. We have discovered no Florida appellate cases where this option was found to have occurred."); *but see Williams v. Aeroland Oil Co.*, 20 So. 2d 346, 348 (Fla. 1944) (discussing the "stand by and do nothing" remedy under the common law). Perhaps this remedy has been passed over because such little guidance has been provided as to how to prove a negative: that one did "nothing." Consequently, this Court is tasked with addressing the availability of the third remedy and interpreting the meaning of the phrase "stand by and do nothing" in section 83.595(3).

### B. "Stand By and Do Nothing"

When engaging in statutory interpretation, "we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *USAA Cas. Ins. Co. v. Mikrogiannakis*, 342 So. 3d 871, 873 (Fla. 5th DCA 2022) (quoting *Forrester v. Sch. Bd. of Sumter Cnty.*, 316 So. 3d 774, 776 (Fla. 5th DCA 2021)). Each word of a statute must be given "its plain, obvious, and common sense [meaning], unless the context furnishes some ground to control, qualify, or enlarge it." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946–47 (Fla. 2020) (quoting *Advis. Op. to Gov. re Implementation of Amend. 4, the Voting Rest. Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020)). To determine the meaning of a statutory text, courts consider "the specific context in which th[e] language is used, and the broader context of the statute as a whole." *See Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

As such, the phrase "stand by and do nothing" cannot be considered in a vacuum, *see Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022) ("[T]he meaning of a word cannot be determined in isolation, but must be drawn from the context in

which it is used." (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993))), nor should it be read hyperliterally, *see* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 355 (2012) ("Literalness may strangle meaning." (citing *Utah Junk Co. v. Porter*, 328 U.S. 39, 44 (1946))). Moreover, because section 83.595 is the codification of common law,[2] it must be interpreted in accordance with the common law except where there is a clear intention to deviate. *See Peoples Gas Sys. v. Posen Constr., Inc.*, 322 So. 3d 604, 611 (Fla. 2021) ("A basic rule of textual interpretation is that 'statutes will not be interpreted as changing the common law unless they effect the change with clarity.'" (quoting Scalia & Garner, *supra*, at 318)).

Under the common law and its codification in section 83.595, the landlord's relationship to—and corresponding use of—the premises must be congruent with its chosen remedy. *See Hudson Pest Control*, 622 So. 2d at 550 ("[T]he nature of the landlord's use of the premises after a defaulting tenant abandons them, governs the availability of the landlord's remedy." (citing *Colonial*

[2] In 1944, the Florida Supreme Court set forth the first three remedies now found in section 83.595, which were available to a landlord "upon the breach, abandonment or renunciation of a lease by the lessee before the expiration of the term." *Williams*, 20 So. 2d at 347–48. After *Williams*, many court opinions repeated essentially the same remedies. *See, e.g.*, *Coast Fed. Sav. & Loan Ass'n v. DeLoach*, 362 So. 2d 982, 984 (Fla. 2d DCA 1978); *Geiger Mut. Agency, Inc. v. Wright*, 233 So. 2d 444, 447 (Fla. 4th DCA 1970); *Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enters., Inc.*, 235 So. 2d 344, 345 (Fla. 2d DCA 1970); *Diehl v. Gibbs*, 173 So. 2d 719, 720 (Fla. 1st DCA 1965); *Wagner v. Rice*, 97 So. 2d 267, 270 (Fla. 1957); *Hyman v. Cohen*, 73 So. 2d 393, 396 (Fla. 1954). In 1987, these remedies were codified in Chapter 83, Part II ("The Florida Residential Landlord and Tenant Act"). *See* § 83.595(1)–(3), Fla. Stat. (1987). The fourth remedy—also adopted from the common law—was added in 2008. *See* § 83.595(4), Fla. Stat. (2008); *see also Olen Props. Corp. v. Moss*, 984 So. 2d 558, 560–61 (Fla. 4th DCA 2008) (rejecting argument for common law liquidated damage remedy where it had not yet been adopted in section 83.595).

*Promenade v. Juhas*, 541 So. 2d 1313, 1315 (Fla. 5th DCA 1989))). A landlord's actions are evidence of its choice of remedy and dictate whether the tenant is liable for any accruing rent under the lease. *See Bucky's Barbeque of Ft. Lauderdale, LLC v. Millennium Plaza Acq., LLC*, 67 So. 3d 1207, 1209 (Fla. 4th DCA 2011) ("It is the landlord's actual use of the property that determines its remedies." (citing *4-Way, Inc. v. Bryan*, 581 So. 2d 208, 209 (Fla. 1st DCA 1991))). Thus, while each remedy is a legal option available to the landlord, the legal posture between the parties and the premises will limit the available remedies. *See, e.g.*, *Hudson Pest Control*, 622 So. 2d at 549 (noting exclusive repossession extinguishes leasehold estate and terminates tenant's future rent obligation under the first remedy); *Geiger Mut. Agency, Inc. v. Wright*, 233 So. 2d 444, 447 (Fla. 4th DCA 1970) (holding landlord who resumed possession by ejectment was limited to the first remedy).

When a tenant has abandoned the dwelling, a landlord may choose any available remedy. § 83.595, Fla. Stat. Abandonment is established where the landlord has actual knowledge of the tenant's abandonment or where it is presumed because the tenant has been absent for half the time for periodic rental payments under the agreement, rent is overdue, and the tenant did not provide written notice of an intended absence. *Id.* § 83.59(3)(c). Despite abandoning the premises, the tenant continues to possess the leasehold estate in the absence of further action by the landlord. *See Williams*, 20 So. 2d at 348 (finding tenant continued to possess abandoned premises because landlord treated lease as "unsurrendered and continuing"); *see also Kanter v. Safran*, 68 So. 2d 553, 556 (Fla. 1953) (distinguishing between surrender of *leasehold premises* and surrender of *leasehold estate*).

10

A landlord can resume possession of the premises by either accepting tenant's surrender[3] or by obtaining a writ of possession.[4] *See* § 83.595, Fla. Stat. However, where the landlord resumes possession—regardless of whether it is for its own account or on behalf of the tenant—it cannot simultaneously claim it has chosen to "stand by and do nothing":

> Either of the first two [remedies] excludes the third. By retaking possession either for his own account or for the account of the lessee, a lessor loses the right to recover the full amount of remaining rental due on the basis of an acceleration clause. The two positions are inconsistent.

*DeLoach*, 362 So. 2d at 984 (citing *Geiger Mut. Agency*, 233 So. 2d 444; *Jimmy Hall's Morningside*, 235 So. 2d 344). Consequently, the third remedy is only available where the dwelling has been abandoned.[5]

---

[3] When landlord accepts surrender of the physical premises, the lease agreement is not automatically terminated. *See In re PAVCO Enters., Inc.*, 172 B.R. 114, 117 (Bankr. M.D. Fla. 1994) ("[I]t is clear that regaining the premises is not tantamount to termination of the lease."). *Compare* § 83.595, Fla. Stat. (providing landlord choice of remedy where tenant "surrendered possession of the dwelling unit" to landlord) *with Kanter*, 68 So. 2d at 556 (distinguishing between surrender of *leasehold premises* and surrender of *leasehold estate*).

[4] A writ of possession is issued after the right to possession has been adjudicated. *See* §§ 83.59, 83.62(1), Fla. Stat.; Fla. R. Civ. P. 1.580. A landlord can only recover possession in certain circumstances. § 83.59(3), Fla. Stat.

[5] In *Duffner*, the court asserted, in dicta: "A close reading of the unambiguous statutory language compels the conclusion that, whether intended or not, in circumstances in which the commencement of eviction proceedings is contemplated, *the*

The meaning of the third remedy is also revealed by looking at the enumerated remedies together.[6]  If the landlord does not choose to "stand by and do nothing," it may either resume exclusive possession of the leasehold estate as if the lease was terminated consistent with the first remedy; mitigate the tenant's accruing liability under the lease by reletting the premises consistent with the second remedy; or seek liquidated damages or an early termination fee consistent with fourth remedy.  § 83.595(1)–(2) & (4), Fla. Stat.  When read in this context, the phrase "stand by and do nothing" indicates the landlord does *not* take any of those actions.  *Cf. Hudson Pest Control*, 622 So. 2d at 550 ("If the landlord resumes possession *and* utilizes [the premises] for purposes other than recovery of the rental due him under the contract, then and only then is he foreclosed from suit for the balance because such would inequitably constitute a double

---

*procurement of a writ of possession is a prerequisite to standing idly by*."  394 So. 3d at 240 (emphasis added).  This appears to be a misstatement.  Under the facts of *Duffner*, there was no abandonment or surrender, *see id.* at 240–41, so procuring a writ of possession was the only path that would have opened the door to the enumerated remedies in section 83.595.  Therefore, a writ of possession was a prerequisite to *suit.  See id.* at 240 n.1.  However, where the landlord takes action to repossess the dwelling by means of legal action, it cannot simultaneously assert it is selecting the option to "stand by and do nothing."  *See DeLoach,* 362 So. 2d at 984.

---

[6]  The first three remedies—including "stand by and do nothing"—were adopted directly from the common law and therefore the presumption-against-change-in-common-law canon should be applied to the extent it conflicts with the scope-of-subparts canon.  *See* Scalia & Garner, *supra*, at 159 (noting "various canons of interpretation [may] point to different outcomes, requiring sound judgment as to which have the strongest force"); *id.* at 318 ("A fair construction ordinarily disfavors implied change.").

recovery." (emphasis added) (quoting *Colonial Promenade*, 541 So. 2d at 1315))). In other words, the landlord continues to abide by the lease agreement and leaves the premises vacant for the period in which accrued rent is sought. *See Phillips v. Seagle Bldg. Co.*, 506 So. 2d 501, 502 (Fla. 1st DCA 1987) (Zehmer, J., concurring) (reasoning landlord chose the third remedy where tenant "continue[d] to have the right of possession of the leased premises" under the lease). Thus, "stand by and do nothing" must mean the landlord maintains the status quo and does not change its legal position or obligations to the tenant despite abandonment. *See id.*; *Williams*, 20 So. 2d at 348.

### *C. A Reasonable View of the Evidence Supported the Jury's Findings*

Below, the jury found the Hefleys abandoned the Premises. As the parties did not agree to liquidated damages or an early termination fee in accordance with section 83.595(4), the jury was left to determine whether Holmquist chose to (1) treat the Lease as terminated and resume exclusive possession of the Premises for himself; (2) take possession of the Premises on behalf of the Hefleys but failed to make a good faith effort[7] to relet it; or (3) "stand by and do nothing" while continuing to perform his duties and obligations under the Lease. Ultimately, the jury found Holmquist chose the third remedy and awarded damages including the accrued rent.

In the motion to set aside the verdict, the Hefleys asserted they surrendered the premises on July 31, 2016, and Holmquist resumed possession of the Premises for his own account[8] on August

---

[7] Because Holmquist never attempted to relet the Premises, he could only recover the accrued rent under the third remedy. *See* § 83.595(2), Fla. Stat.

[8] In the motion, the Hefleys asserted there was no testimony or evidence that Holmquist took possession of the premises on their behalf. To the extent the Hefleys' briefs assert Holmquist may have chosen the second remedy, they are bound by their

13

1, 2016. Specifically, the Hefleys argued his repossession was evidenced by his testimony and actions including changing the locks and alarm code, painting, cleaning, affecting repairs, replacing the carpet, placing the home for sale, moving furniture into the home, and spending two nights in the dwelling himself. The trial court granted the Hefleys' motion to set aside the verdict only as to Holmquist's choice of remedy under section 83.595 and extinguished his ability to recover accrued rent as a portion of the damages.

Under the scope of this review, this Court *must* reverse unless there is *no* view of the evidence—considered in the light most favorable to Holmquist—that could support the jury's finding that he chose to "stand by and do nothing" within the meaning of section 83.595(3).

Here, the jury found the Hefleys abandoned the Premises, and this finding has not been appealed. Abandonment is consistent with the third remedy where the landlord chooses to "stand by and do nothing." *Cf. DeLoach*, 362 So. 2d at 984 (noting landlord's resumed possession of the dwelling is inconsistent with the third remedy). Thus, Holmquist could choose to continue to enforce the lease as valid unless he resumed exclusive possession of the dwelling unit after abandonment. *See Williams*, 20 So. 2d at 348–49; *PAVCO Enters.*, 172 B.R. at 117.

As Holmquist did not pursue a writ of possession, he could only have resumed possession within the meaning of section 83.595 by treating the abandonment as a surrender of the dwelling unit. Surrender is found where the tenant's voluntary relinquishment of the premises is followed by express or implied acceptance by the landlord. *See Kanter*, 68 So. 2d at 556. Here, the evidence did not demonstrate that Holmquist accepted surrender under the terms of the Lease, which required his

_____

concession below. *See Dickson v. Econ. Premier Assurance Co.*, 36 So. 3d 789, 791 n.3 (Fla. 5th DCA 2010) ("[A] party may not ordinarily take one position in proceedings at the trial level and then take an inconsistent position on appeal . . . ." (quoting *Harper ex rel. Daley v. Toler*, 884 So. 2d 1124, 1135 (Fla. 2d DCA 2004))).

acceptance in writing.[9]   In the absence of express surrender, surrender by operation of law can be found "where the lessor has been a party to some act or acts incompatible with the continued existence of the relation of landlord and tenant." *Id.*   Thus, Holmquist's actions must be considered to determine whether there was surrender by operation of law after the Hefleys abandoned the dwelling, thereby precluding his assertion that he chose to stand by and do nothing.

I. Holmquist Performed Expressly Authorized Landlord Duties

Where the expressly *authorized* uses of the Premises must be compared to Holmquist's *actual* use after the Hefleys' abandonment, including the measures taken to enter, secure, and restore the home.

The Hefleys had "exclusive use and right of possession" to the Premises under the terms of the Lease.  Holmquist was required to furnish the Hefleys with two sets of keys, which "shall be returned to [Holmquist] in person at end of lease term."  The Lease delegated Holmquist explicit responsibility for compliance with section 83.51, Florida Statutes,[10] as well as "maintenance and repair of the Premises."  Under the Florida Residential Landlord

---

[9]   The Lease provided: "No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by the Landlord."  While the Lease dictates what must occur for express surrender to be found, neither party asserts the Lease prevents surrender by operation of law.

[10]   Section 83.51(1) provides that a landlord has an ongoing duty to comply with the requirements of the applicable building, housing, and health codes or, where none are available, "maintain the roofs, windows, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition."  § 83.51(1), Fla. Stat.

and Tenant Act,[11] a landlord is prohibited from "prevent[ing] the tenant from gaining reasonable access to the dwelling unit by any means, including, but not limited to, changing the locks." *Id.* § 83.67(2); *see also Nugent v. Michelis*, 312 So. 3d 954, 958 (Fla. 4th DCA 2021) ("A landlord improperly locking a tenant out of the premises is considered constructive eviction." (quoting *Hankins v. Smith*, 103 Fla. 892, 138 So. 494, 495 (1931))). However, a landlord is authorized to remove locks to leased premises for the purpose of maintenance, repair, or replacement. § 83.67(5), Fla. Stat.

A landlord is also expressly authorized to access the leased premises under three different contexts. *Id.* § 83.53. First, a landlord may enter "*at any time* for the protection or preservation of the premises." *Id.* § 83.53(2) (emphasis added). Second, the landlord may access the premises "*upon reasonable notice to the tenant and at a reasonable time* for the purpose of repair of the premises." *Id.* (emphasis added). Third, the landlord may enter, *when necessary,* under any of the following circumstances:

> (a) With the consent of the tenant;
>
> (b) In case of emergency;
>
> (c) When the tenant unreasonably withholds consent; or
>
> (d) If the tenant is absent from the premises for a period of time equal to one-half the time for periodic rental payments. If the rent is current and the tenant notifies the landlord of an intended absence, then the landlord may enter only with the consent of the tenant or for the protection or preservation of the premises.

---

[11] The parties stipulated that the Lease was governed by the Florida Residential Landlord and Tenant Act.

16

*Id.* § 83.53(2).[12] The tenant is explicitly prohibited from "unreasonably withhold[ing] consent to the landlord to enter the

---

[12] Despite referencing the Florida Residential Landlord and Tenant Act, the Lease limited Holmquist's authorization to essentially one context, i.e, *the Hefleys' consent*:

> As provided in Chapter 83, Part II, Residential Landlord and Tenant Act, Florida Statutes, Landlord or Landlord's Agent may enter the Premises in the following circumstances:
>
> A. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises *with Tenant's consent.*
>
> B. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors, *all with Tenant's consent.*

(emphasis added).

However, the Lease also provided: "All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida." Pursuant to the Florida Residential Landlord and Tenant Act, the requirement that the Hefleys' consented to every instance where Holmquist entered the Premises is void and unenforceable except to the extent that consent is required under the act itself. *See* § 83.47(1)(a), Fla. Stat. ("A provision in a rental agreement is void and unenforceable to the extent that it . . . [p]urports to waive or preclude the rights, remedies, or requirements set forth in this part."); *Duffner*, 394 So. 3d at 239 (discussing section 83.47(1)).

dwelling unit from time to time in order to inspect the premises; make necessary or agreed repairs, decorations, alterations, or improvements; . . . or exhibit the dwelling unit to . . . workers, or contractors." *Id.* § 83.53(1). However, a "landlord shall not abuse the right of access nor use it to harass the tenant." *Id.* § 83.53(3).

Here, Holmquist was always authorized to enter the Premises for its protection and preservation. *Id.* § 83.53(2). Because the Hefleys changed the locks and did not leave keys behind when they abandoned the property, Holmquist needed assistance to enter and secure the Premises. A reasonable jury could find that Holmquist did not change the locks and alarm code to prevent the Hefleys from gaining access, but rather for the purpose of replacing the locks they had changed and which he could not secure.[13] *Id.* § 83.67(5). After abandonment, Holmquist had to maintain access to the Premises with the new keys and alarm code to satisfy his duties under the Lease. If the Hefleys indicated any desire to return, Holmquist would have been required to provide the new keys and alarm code. Here, however, the Hefleys never sought to regain access to the Premises.

Holmquist also had an explicit duty to maintain and repair the Premises. The jury found the Hefleys unreasonably withheld consent for Holmquist to inspect the Premises and later abandoned it. Thus, a reasonable jury could have found Holmquist also had authorization to access the Premises when necessary to inspect it,

_____

[13] On cross-examination, after Holmquist testified he changed the locks because the house was left "wide open," the Hefleys' counsel asked Holmquist if it was fair to say he took possession of the house on that date. In reply, Holmquist testified, "It's fair to say, yes, I guess so." However, Holmquist also testified that he never accepted the Hefleys' termination of the lease and that his actions were for the purpose of securing, repairing, and selling the home. This testimony is not dispositive as to whether Holmquist resumed possession for the purposes of section 83.595.

18

provide access for workers or contractors, or make necessary—even if not agreed upon—"repairs, decorations, alterations, or improvements" consistent with section 83.53(1)–(2). *See Kanter*, 68 So. 2d at 556 ("The fact that the landlord enters and cares for the premises after the tenant's abandonment is not regarded as showing a resumption of exclusive possession, effecting a surrender, nor does the making of repairs in itself have that effect."); *see also* § 83.47(1)(a), Fla. Stat. This would include cleaning, painting, affecting repairs, and replacing the carpet.

Thus, under these facts, these actions and uses would not be incongruent with Holmquist's choice to "stand by and do nothing" consistent with section 83.595(3).

## II. Holmquist's Other Actions Were Not Conclusive

The other actions at issue would not be considered specifically authorized duties of the landlord under the Lease or Florida law: placing the home for sale, moving furniture into the Premises, and spending two nights in the home. However, under the facts of this case, these acts did not preclude Holmquist from asserting he chose the remedy in section 83.595(3).

A landlord cannot resume possession of the leased property and simultaneously seek accruing rent consistent with the third remedy. *See DeLoach*, 362 So. 2d at 984. However, listing the Premises for sale does not necessarily require the landlord's repossession of the property until the date of sale. This is demonstrated in the Florida Residential Landlord and Tenant Act, which prohibits the tenant from unreasonably withholding consent for the landlord to "exhibit the dwelling unit to *prospective* or *actual* purchasers." § 83.53(1), Fla. Stat. (emphasis added). Apart from the specific uses discussed in this decision, the Premises laid vacant from abandonment until the dwelling was sold. Holmquist did not seek a double recovery but properly limited his damages to the rent that accrued until the sale of the property in February 2017. *See Geiger Mut. Agency*, 233 So. 2d at 447 (reversing summary judgment finding landlord could recover accrued rent only until the date it resumed possession for its own purposes); *but see Jimmy Hall's Morningside*, 235 So. 2d at 345–46 (noting landlord cannot accelerate full rent due under a lease while

demanding possession of the premises or reletting to a third party). Thus, a reasonable jury could find placing the home for sale was not inconsistent with Holmquist's remedy under section 83.595(3).

Finally, while perhaps unusual actions for a landlord, it was not impossible for a jury to determine that Holmquist's remaining actions—placing a bed and dresser in the home for the purpose of staging it for sale and spending two nights in the Premises during the threat of a natural disaster and more than a month after abandonment—were not of such a nature as to be considered resumed possession of the Premises. *See Hudson Pest Control*, 622 So. 2d 546, 550 ("Occupancy of the premises by the landlord and its operation and use by the landlord does not under all circumstances amount to a surrender by operation of law."); *Hickson v. Barton*, 80 So. 745, 747–48 (Fla. 1919) (finding landlord can take action to preserve and protect abandoned premises, and even occasionally rent out the property for a special purpose, without accepting abandonment or relinquishing claim for accruing rent); *cf. Kanter*, 68 So. 2d at 556 ("[W]hether the possession taken by [landlord] is of an exclusive character, with the apparent intention of occupying and controlling the premises as his own, to the exclusion of the tenant, in case the latter desires to return . . . is ordinarily a question of fact."). This is particularly true where, as here, Holmquist never used the house for any business purposes, he explicitly refused to accept the Hefleys' attempt to terminate the lease, he informed the Hefleys he expected their payment of rent through the remainder of the lease term, and the house otherwise sat vacant the entire period from abandonment until the house sold. *See Kanter*, 68 So. 2d at 557 ("[S]urrender by operation of law will not be implied where such was manifestly not the intent of the parties.").

While these actions may not be considered consistent with a valid lease in other circumstances, here, review is limited to whether any view of the evidence would support the jury verdict. Under the facts of this case, these isolated actions are not so conclusive as to support setting aside the verdict. *See Blue Water Coast Servs., LLC v. Maize*, 385 So. 3d 150, 152 (Fla. 4th DCA 2024) ("A jury's verdict in a civil case is generally 'clothed with a presumption of regularity.'" (quoting *Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 643 (Fla. 2015))); *Atkinson v. Anderson*, 77 So. 3d

768, 769 (Fla. 4th DCA 2011) ("Only where there is no evidence upon which a jury could properly rely, in finding for the plaintiff, should a directed verdict be granted." (quoting *Stokes v. Ruttger*, 610 So. 2d 711, 713 (Fla. 4th DCA 1992))).

## Conclusion

Because this issue was rightly considered a question of fact delegated to the jury, and the evidence—viewed in a light most favorable to Holmquist—could support the jury's finding that his chosen remedy was section 83.595(3), I concur in the majority's decision to reverse and reinstate the jury's verdict.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————